UNITED STATES, Appellee

v.

Javier A. MORENO Jr., Corporal
U.S. Marine Corps, Appellant

No. 04-0698

Crim. App. No. 200100715

United States Court of Appeals for the Armed Forces

Argued September 21, 2005

Decided May 11, 2006

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and EFFRON and BAKER, JJ., joined.  CRAWFORD, J.,
filed a separate opinion concurring in part and dissenting in
part.


Counsel

For Appellant:  Lieutenant Brian L. Mizer, JAGC, USNR (argued).

For Appellee:  Major Kevin C. Harris, USMC (argued); Lieutenant
Colonel William Lietzau, USMC, Commander Charles N. Purnell,
JAGC, USN, and Lieutenant Donald L. Palmer, JAGC, USNR (on
brief).

Military Judge:  E. B. Stone


**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.

Corporal Javier A. Moreno Jr. was tried by general court-martial for the offense of rape in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2000). Moreno entered a plea of not guilty but was convicted by members who subsequently sentenced him to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence and the United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence in an unpublished decision. United States v. Moreno, No. NMCCA 200100715, 2004 CCA LEXIS 118 (N-M. Ct. Crim. App. May 13, 2004). We granted review of three issues.[1]

---

[1] On March 18, 2005, we granted review of the following issues:

I.

WHETHER LIEUTENANT COLONEL [F] WAS AN INVESTIGATING OFFICER WITHIN THE MEANING OF R.C.M. 912(f)(1)(F) AND SHOULD NOT HAVE SERVED AS PRESIDENT OF APPELLANT'S COURT-MARTIAL.

II.

WHETHER LIEUTENANT COLONEL [F]'S SERVICE AS PRESIDENT OF APPELLANT'S COURT-MARTIAL RAISED SUBSTANTIAL DOUBT TO THE LEGALITY, FAIRNESS, AND IMPARTIALITY OF APPELLANT'S COURT-MARTIAL.

III.

WHETHER APPELLANT'S DUE PROCESS RIGHT TO TIMELY REVIEW OF HIS APPEAL HAS BEEN DENIED.

We heard argument in this case on September 21, 2005, aboard the USS RONALD REAGAN (CVN 76) afloat in the Pacific Ocean as part of the Court's "Project Outreach." See United States v.

United States v. Moreno Jr., No. 04-0698/MC

An accused is entitled to a trial by members who are qualified, properly selected, and impartial. See Article 25, UCMJ, 10 U.S.C. § 825 (2000). Moreno claims that Lieutenant Colonel (LtCol) F, the president of his court-martial, should have been removed because he had conducted an investigation of the case, had extensive knowledge of this case and that of Moreno's co-accused, and was married to a rape counselor who had previously worked at the family advocacy office where the alleged victim was counseled. We conclude that the presence of LtCol F on the panel created substantial doubt about the fairness and impartiality of this court-martial and that the military judge erred in denying the challenge for cause against LtCol F.[2]

Due process entitles convicted servicemembers to a timely review and appeal of court-martial convictions. Toohey v. United States, 60 M.J. 100, 101 (C.A.A.F. 2004). Moreno asserts that he was denied due process because there was unreasonable

---

Mahoney, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a Federal Court of Appeals and the military justice system.

[2] Because of our holding that the military judge erred in denying the challenge for cause against LtCol F, we need not address the first granted issue concerning whether LtCol F acted as an investigating officer within the meaning of Rule for Courts-Martial (R.C.M.) 912(f)(1)(F), Manual for Courts-Martial, United States (2005 ed.) (MCM). Similarly, because we find that LtCol F possessed too much pretrial information about the case, we need not address the effect of his wife's role as a rape counselor.

delay in the 1,688 days between the end of his trial and the date upon which the United States Navy-Marine Corps Court of Criminal Appeals rendered its decision in his case. We conclude that Moreno was denied his due process right to speedy appellate review and we find that under the circumstances of this case relief is warranted.

## BACKGROUND

Moreno worked in the comptroller's disbursing office. Among the members detailed to Moreno's court-martial was LtCol F, the deputy comptroller. Lieutenant Colonel F was advised of the incident that gave rise to the rape charge by Moreno's officer-in-charge. Lieutenant Colonel F decided to look into the incident further so that he could brief the comptroller. In the course of his inquiry into the incident, LtCol F became aware of information that had been entered into various logbooks. He spoke to some of the duty officers who had knowledge of the incident and he read various articles that were published in Stars and Stripes. Lieutenant Colonel F described his efforts to gather this information as "simply fact finding. You know, I wanted to be able to get all the -- find out what was being reported in the logbook and just so I had a complete picture before I talked to my boss on what he would be hearing Monday morning."

In addition to his personal inquiries into the incident, LtCol F became aware of Moreno's co-accused's case based on what he read in Stars and Stripes. Lieutenant Colonel F's pretrial knowledge of the incident and the subsequent criminal cases included: (1) that the incident involved drinking at the club; (2) that the victim may have been drugged; (3) that there had been sexual contact; (4) that both Moreno and his co-accused were placed in pretrial confinement; (5) that the co-accused could be a witness at Moreno's trial; and (6) that there were delays in Moreno's trial relating to obtaining the co-accused's presence at Moreno's trial.

Defense counsel challenged eight members appointed by the convening authority on a variety of grounds. The defense asserted that LtCol F could not be impartial because he "followed this case closely" and had "read everything involving this case." The Government responded that the defense counsel had failed to state a reason for a challenge under Rule for Courts-Martial (R.C.M.) 912, Manual for Courts-Martial, United States (2005 ed.) (MCM).[3] The military judge, while granting seven of the eight challenges for cause, denied the challenge against LtCol F without comment. The defense counsel then

---

[3] R.C.M. 912(f)(1)(N) in the 2005 edition of the MCM is identical to that in the 1998 edition of the MCM that was in effect at the time of Moreno's trial.

5

exercised a peremptory challenge against another member. Ultimately, LtCol F served as president of the court-martial.

Moreno was sentenced on September 29, 1999. Two hundred eight days later, the 746-page record of trial was authenticated by the military judge. On January 31, 2001, 490 days after completion of the trial, the convening authority took action. Seventy-six days later, the case was docketed at the Navy-Marine Corps Court of Criminal Appeals.

The Navy-Marine Corps Court of Criminal Appeals granted eighteen motions for enlargement of time to Moreno's appellate defense attorney before the defense brief was filed on March 20, 2003 (702 days from docketing). The Government filed an answer brief on October 29, 2003 (223 days from submission of Moreno's brief). The Court of Criminal Appeals issued its unpublished decision on May 13, 2004 (197 days from the completion of briefing). Four years, seven months and fourteen days (1,688 days) elapsed between the completion of trial and the completion of Moreno's appeal of right under Article 66, UCMJ, 10 U.S.C. § 866 (2000).

DISCUSSION

Implied Bias

Moreno asserts that LtCol F's presence on his court-martial panel undermined public confidence in military justice and that, under the liberal grant mandate, the military judge should have

6

United States v. Moreno Jr., No. 04-0698/MC

granted the challenge for cause. The Government argues that some knowledge of the facts does not serve to disqualify a potential court member and that the totality of the circumstances reveals that Moreno did not meet his burden of showing a substantial doubt as to the legality, fairness or impartiality of the trial.

Rule for Courts-Martial 912 includes challenges based upon the distinct concepts of actual bias and implied bias. United States v. Napoleon, 46 M.J. 279, 283 (C.A.A.F. 1997); United States v. Minyard, 46 M.J. 229, 231 (C.A.A.F. 1997). In this case we are concerned with the possibility of implied bias under R.C.M. 912(f)(1)(N), which provides a basis for challenge when it appears an individual "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."

The test for implied bias is objective. Viewing the circumstances through the eyes of the public and focusing on the perception or appearance of fairness in the military justice system, we ask whether, despite a disclaimer of bias, most people in the same position as the court member would be prejudiced. United States v. Napolitano, 53 M.J. 162, 167 (C.A.A.F. 2000); United States v. Warden, 51 M.J. 78, 81 (C.A.A.F. 1999). We look to determine whether there is "too high a risk that the public will perceive" that the accused

United States v. Moreno Jr., No. 04-0698/MC

received less than a court composed of fair, impartial, equal members.  United States v. Weisen, 56 M.J. 172, 176 (C.A.A.F. 2001).  We review rulings on challenges for implied bias under a standard that is less deferential than abuse of discretion, but more deferential than de novo review.  United States v. Armstrong, 54 M.J. 51, 54 (C.A.A.F. 2000); Napolean, 46 M.J. at 283.

In reviewing a ruling on a challenge for cause, we remain mindful of the liberal grant mandate.  "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause" asserted by an accused.  United States v. White, 36 M.J. 284, 287 (C.M.A. 1993); see also United States v. James, 61 M.J. 132, 139 (C.A.A.F. 2005); United States v. Downing, 56 M.J. 419, 422 (C.A.A.F. 2002).  The liberal grant mandate recognizes the unique nature of military courts-martial panels, particularly that those bodies are detailed by convening authorities and that the accused has only one peremptory challenge.  See James, 61 M.J. at 139; Downing, 56 M.J. at 422; United States v. Rome, 47 M.J. 467, 469 (C.A.A.F. 1998); United States v. Hamilton, 41 M.J. 22, 25 (C.M.A. 1994).  Thus, we will overturn a military judge's ruling on an accused's challenge for cause where he clearly abuses his discretion in applying the liberal grant mandate.

Implied bias should be invoked sparingly.  United States v. Strand, 59 M.J. 455, 458 (C.A.A.F. 2004) (citing Warden, 51 M.J. at 81-82); Rome, 47 M.J. at 469.  Nevertheless, we are not reluctant to apply the doctrine to ensure the appearance of fairness in courts-martial.  Thus, in Minyard, 46 M.J. at 231-32, we reversed a conviction where the wife of an investigating agent who worked on the case was allowed to sit on the panel.  In Weisen, 56 M.J. at 175-77, we reversed a conviction where the president of the court-martial and his military subordinates comprised two-thirds of the panel.  Similarly, in United States v. Miles, 58 M.J. 192, 195 (C.A.A.F. 2003), we reversed a conviction for use of cocaine where the military judge denied a challenge to a member whose nephew died from complications associated with his mother's prenatal use of cocaine.[4]

From the outset, LtCol F took an active interest in this case.  He took it upon himself to seek out information so that he could get a "complete picture" to brief his boss, the comptroller.  His preparations for the briefing included conducting personal interviews of duty officers and reading entries in various log books.  Once he had gathered the information to brief the comptroller, his interest in Moreno's case did not wane.  He read about the charges against Moreno in

---

[4] See also United States v. Daulton, 45 M.J. 212, 216-18 (C.A.A.F. 1996); United States v. Smart, 21 M.J. 15, 18-21 (C.M.A. 1985).

newspapers and also read about the court-martial of Moreno's co-accused, who was acquitted of wrongdoing for the same incident.[5]

We believe that an objective observer would perceive that LtCol F possessed an excessive level of pretrial knowledge about the incident to sit as an impartial panel member. His personal inquiry went beyond a routine passing of information to a superior. His inquiries were so thorough that he subjectively believed he knew all there was to know -- that he had the "complete picture."

Under these circumstances -- where LtCol F had investigated the incident, weighed facts, made recommendations based on his conclusions and continued to follow both this case and the case of Moreno's co-accused in the press -- an objective observer could reasonably question whether LtCol F could come to any different conclusions based solely on evidence presented in court. An observer could also reasonably question whether LtCol F would contradict his initial conclusions and recommendations to the comptroller if warranted by the evidence.

An objective observer could harbor a reasonable concern that as president of the court-martial, LtCol F would exert influence over other court-martial members arising from his in-

---

[5] Moreno's co-actor was acquitted of rape on August 19, 1999. The following day, an article appeared in Stars and Stripes captioned "Okinawa Marine innocent of rape." On August 27, 1999, Stars and Stripes reported that Moreno's trial would proceed despite the co-actor's acquittal.

depth personal knowledge of the facts rather than from the evidence presented in court. We also believe that the objective observer would not accord much weight to LtCol F's assertion that he could be impartial in view of the depth of his prior involvement. "[W]e do not accept as conclusive a challenged member's perfunctory disclaimer of personal interest or his assertion of impartiality." United States v. Smart, 21 M.J. 15, 19 (C.M.A. 1985).

Thus, we hold that there is a substantial doubt that this trial was by a panel of members who were fair and impartial and the military judge therefore erred by denying the challenge for cause against LtCol F.

Speedy Post-Trial and Appellate Review

Moreno contends that the 1,688 days that elapsed between the completion of his court-martial and the decision of the Court of Criminal Appeals was unreasonable and denied him due process. Moreno argues that he had legitimate claims of error in his case and that the delay has denied him the opportunity for meaningful relief. The Government counters that the time involved in Moreno's post-trial processing and appeal was not unreasonable. Alternatively, the Government asserts that even if the delay is unreasonable, Moreno's due process rights have not been violated.

United States v. Moreno Jr., No. 04-0698/MC

The Supreme Court has recognized "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Evitts v. Lucey, 469 U.S. 387, 393 (1985); see also Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 38 (C.A.A.F. 2003). "[A]n appeal that is inordinately delayed is as much a 'meaningless ritual,' Douglas [v. California, 372 U.S. 353, 358 (1963)], as an appeal that is adjudicated without the benefit of effective counsel or a transcript of the trial court proceedings." Harris v. Champion (Harris II), 15 F.3d 1538, 1558 (10th Cir. 1994).

This court has recognized that convicted servicemembers have a due process right to timely review and appeal of courts-martial convictions. Toohey, 60 M.J. at 101; Diaz, 59 M.J. at 37-38. We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal. See United States v. Rodriguez, 60 M.J. 239, 246 (C.A.A.F. 2004) (conclusions of law are reviewed under the de novo standard); United States v. Cooper, 58 M.J. 54, 58 (C.A.A.F. 2003) (speedy trial issues, as conclusions of law, are reviewed de novo).

In conducting this review we have adopted the four factors set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the

12

appellant's assertion of the right to timely review and appeal;

and (4) prejudice.  United States v. Jones, 61 M.J. 80, 83

(C.A.A.F. 2005); Toohey, 60 M.J. at 102.  While Barker addressed

speedy trial issues in a pretrial, Sixth Amendment context, its

four-factor analysis has been broadly adopted for reviewing

post-trial delay due process claims.[6]

Once this due process analysis is triggered by a facially

unreasonable delay, the four factors are balanced, with no

single factor being required to find that post-trial delay

constitutes a due process violation.  Barker, 407 U.S. at 533

("We regard none of the four factors identified above as either

a necessary or sufficient condition to the finding of a

deprivation of [due process].");  Simmons v. Reynolds, 898 F.2d

865, 868 (2d Cir. 1990) ("[N]o one factor is dispositive and all

---

[6] Latimore v. Spencer, 994 F. Supp. 60, 67 (D. Mass. 1998)
("[T]he First Circuit examines such cases on a case by case
basis applying factors similar to those employed in Barker.");
Simmons v. Reynolds, 898 F.2d 865, 868 (2d Cir. 1990); Burkett
v. Cunningham, 826 F.2d 1208, 1222 (3d Cir. 1987); United States
v. Johnson, 732 F.2d 379, 381-82 (4th Cir.), cert. denied, 469
U.S. 1033 (1984); Rheuark v. Shaw, 628 F.2d 297, 303 (5th Cir.
1980), cert. denied, 450 U.S. 931 (1981); United States v.
Smith, 94 F.3d 204, 207 (6th Cir. 1996); United States v.
Kimmons, 917 F.2d 1011, 1015 (7th Cir. 1990); United States v.
Hawkins, 78 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S.
844 (1996); United States v. Tucker, 8 F.3d 673, 676 (9th Cir.
1993)(en banc), cert. denied, 510 U.S. 1182 (1994); Harris v.
Champion (Harris I), 938 F.2d 1062, 1068 (10th Cir. 1991);
Harris v. Champion (Harris II), 15 F.3d 1538, 1559 (10th Cir.
1994); Harris v. Champion (Harris III), 48 F.3d 1127 (10th Cir.
1995).

United States v. Moreno Jr., No. 04-0698/MC

are to be considered together with the relevant circumstances.").

We analyze each factor and make a determination as to whether that factor favors the Government or the appellant. See Rheuark v. Shaw, 628 F.2d 297, 303 (5th Cir. 1980) (calling for an ad hoc evaluation of the four Barker factors). We then balance our analysis of the factors to determine whether there has been a due process violation. Barker, 407 U.S. at 533 ("[C]ourts must still engage in a difficult and sensitive balancing process."). No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding. Id. With this structure as our guide, we turn to an analysis of the four factors as they arise in Moreno's case.

1. Length of the delay

Initially, unless the delay is facially unreasonable, the full due process analysis will not be triggered. Toohey, 60 M.J. at 102. We conduct a case-by-case analysis to determine if a given delay is facially unreasonable.[7] Id. at 103.[8] In this

---

[7] Rheuark, 628 F.2d at 303 ("[N]ot every delay in the appeal of a case, even an inordinate one, violates due process.").

[8] In the speedy trial context, "extreme cases of delay would produce a strong presumption of prejudice to the ability of a party to defend itself at trial . . . ." United States v. Smith, 94 F.3d 204, 211 (6th Cir. 1996) (citing Doggett v. United States, 505 U.S. 647, 655-58 (1992)). Circuit courts have split on whether the Doggett presumption of prejudice is

case we conclude that the overall period of post-trial review and appeal, 1,688 days, is facially unreasonable and thus we will proceed to the remaining Barker factors.

2. Reasons for the delay

Under this factor we look at the Government's responsibility for any delay, as well as any legitimate reasons for the delay, including those attributable to an appellant.  In assessing the reasons for any particular delay, we examine each stage of the post-trial period because the reasons for the delay may be different at each stage and different parties are responsible for the timely completion of each segment.[9]

The 490 days between the end of trial and the convening authority's action is excessive for the post-trial processing of this case.  The processing in this segment is completely within the control of the Government and no exceptional circumstances have been offered to explain this delay.  See United States v. Bigelow, 57 M.J. 64, 68-69 (C.A.A.F. 2002).  It is striking that this period is over five times longer than that deemed reasonable by this court when we established the ninety-day rule in Dunlap v. Convening Authority, 23 C.M.A. 135, 48 C.M.R. 751

applicable to a due process appellate delay analysis.  Compare Harris II, 15 F.3d at 1564, and Smith, 94 F.3d at 211-12 (presumption applicable), with United States v. Mohawk, 20 F.3d 1480, 1487-88 (9th Cir. 1994) (presumption not applicable).

United States v. Moreno Jr., No. 04-0698/MC

(1974).[10] The seventy-six days between action and docketing the case before the Court of Criminal Appeals is also unexplained. Delays involving this essentially clerical task have been categorized as "the least defensible of all" post-trial delays. United States v. Dunbar, 31 M.J. 70, 73 (C.M.A. 1990).

The longest delay in this case -- 925 days -- involves the period from which the case was docketed at the Court of Criminal Appeals until briefing was complete. The Government claims that Moreno is directly responsible for the almost two years it took to file his brief at the Court of Criminal Appeals. The record reflects that appellate defense counsel sought and was granted eighteen enlargements of time within which to file a brief. Enlargement numbers four through eighteen each contained the same reason for the request: "other case load commitments."

While the Government argued that this period of delay was in Moreno's interest, there was no evidence demonstrating that the enlargements were directly attributable to Moreno or that the need for additional time arose from other factors such as the complexity of Moreno's case. The Government further argued

_____

[9] Convening authorities, reviewing authorities, and the Courts of Criminal Appeals can provide significant relief for unreasonable delays at their respective stages of the process.
[10] In Dunlap v. Convening Authority, 23 C.M.A. 135, 138, 48 C.M.R. 751, 754 (1974), this court presumed a denial of speedy disposition where the convening authority failed to take action within ninety days of trial. The presumption placed "a heavy burden on the Government to show diligence, and in the absence

16

that we should presume the delays were for Moreno's benefit, but did not provide any legal authority to support such a presumption. There is no evidence in this case that the numerous requests for delay filed by appellate defense counsel benefited Moreno or that Moreno was consulted about and agreed to these delays. "Other case load commitments" logically reflects that Moreno's case was not getting counsel's professional attention, a fact that is the very antithesis of any benefit to Moreno. We therefore decline to hold Moreno accountable for this period of delay. As we said in Diaz, 59 M.J. at 38:

> Appellate counsel caseloads are a result of management and administrative priorities and as such are subject to the administrative control of the Government. To allow caseloads to become a factor in determining whether appellate delay is excessive would allow administrative factors to trump the Article 66 and due process rights of appellants. To the contrary, the Government has a statutory responsibility to establish a system of appellate review under Article 66 that preserves rather than diminishes the rights of convicted servicemembers. In connection with that responsibility, the Government has a statutory duty under Article 70 to provide Petitioner with appellate defense counsel who is able to represent him in both a competent and timely manner before the Court of Criminal Appeals.

---

of such a showing the charges should be dismissed." Id. (internal quotation marks omitted).

Internal footnote omitted.  See also Barker, 407 U.S. at 531 (noting that ultimate responsibility of delay caused by negligence or overcrowded courts rests with the Government).[11]

   While appellate defense counsel's caseload is the underlying cause of much of this period of delay, responsibility for this portion of the delay and the burden placed upon appellate defense counsel initially rests with the Government. The Government must provide adequate staffing within the Appellate Defense Division to fulfill its responsibility under the UCMJ to provide competent and timely representation.  See Article 70, UCMJ, 10 U.S.C. § 870 (2000).  Ultimately the timely management and disposition of cases docketed at the Courts of Criminal Appeals is a responsibility of the Courts of Criminal Appeals.  Therefore, we decline to hold Moreno responsible for the lack of "institutional vigilance" which should have been exercised in this case.  See Diaz, 59 M.J. at 39-40.

   The final period of delay is the 197 days from submission of the final briefs to the Court of Criminal Appeals' decision. We will apply a more flexible review of this period, recognizing that it involves the exercise of the Court of Criminal Appeals'

---

[11] See Harris II, 15 F.3d at 1562-63 ("lack of funding and, possibly, the mismanagement of resources by the Public Defender" were not an "acceptable excuse for delay."); Coe v. Thurman, 922 F.2d 528, 531 (9th Cir. 1990) (failures of court-appointed counsel and delays by the court are attributable to the state); Simmons v. Beyer, 44 F.3d 1160, 1170 (3d Cir. 1995).

judicial decision-making authority.[12]  We find that a period of slightly over six months is not an unreasonable time for review by the Court of Criminal Appeals.  Thus, under Barker's second factor -- reasons for the delay -- the unreasonable delays in this case are either unexplained or the responsibility of the Government.  There is no reason given for the unreasonable delays in getting this case from trial to the convening authority for action and in docketing the case before the Court of Criminal Appeals after action.  The Government bears responsibility for unreasonable delay during appeal occasioned by the workload of appellate defense counsel.  We conclude that this second Barker factor weighs heavily in favor of Moreno.

3.  Assertion of the right to a timely review and appeal

This factor calls upon us to examine an aspect of Moreno's role in this delay.  Moreno did not object to any delay or assert his right to timely review and appeal prior to his arrival at this court.  The Supreme Court in Barker, 407 U.S. at

---

[12] "Courts, of course, are not excluded from the obligation to give defendants a speedy trial.  But the function of appellate courts necessarily casts the delay attendant upon their deliberations in a somewhat different light . . . ."  United States v. Biston, 463 F.2d 887, 890 (D.C. Cir. 1972).  We are mindful in the military justice system of the distinct functions of a first level appeal of right court as opposed to a discretionary second level appellate court.  The Courts of Criminal Appeals have "unique authority that is the product of the evolution of military justice in the United States." United States v. Boone, 49 M.J. 187, 191 (C.A.A.F. 1998).  Congress provided these appellate tribunals with "an authority rarely if ever seen in other appellate courts."  Id. at 192.

531-32, noted that where the defendant has asserted his speedy trial right, it is "entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." The Court rejected, however, "the rule that a defendant who fails to demand a speedy trial forever waives his rights." Id. at 528.

We do not believe this factor weighs heavily against Moreno under the circumstances of this case. The obligation to ensure a timely review and action by the convening authority rests upon the Government and Moreno is not required to complain in order to receive timely convening authority action. United States v. Bodkins, 60 M.J. 322, 323-24 (C.A.A.F. 2004). Similarly, Moreno bears no responsibility for transmitting the record of trial to the Court of Criminal Appeals after action. Nor is it unreasonable to assume, as Moreno argues, that a convicted person wants anything other than a prompt resolution of his appeal. See Harris II, 15 F.3d at 1563.

We also recognize the paradox of requiring Moreno to complain about appellate delay either to his appellate counsel who sought multiple enlargements of time because of other case commitments or to the appellate court that granted the enlargements on a routine basis.[13] While this factor weighs

---

[13] See Harris II, 15 F.3d at 1563 ("Furthermore, petitioners were hampered by the fact that they had to speak through their counsel in the state court appellate process and, in most

against Moreno, the weight against him is slight given that the primary responsibility for speedy processing rests with the Government and those to whom he could complain were the ones responsible for the delay.

4.  Prejudice

   In Barker, 407 U.S. at 532, the Supreme Court recognized a framework to analyze the "prejudice" factor in a speedy trial context.  We agree with the Fifth Circuit's modification of that framework for analyzing prejudice in a due process post-trial delay analysis:

> In the case of appellate delay, prejudice should be assessed in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay.  We identify three similar interests for prompt appeals:  (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

Rheuark, 628 F.2d at 303 n.8; see also United States v. Hawkins, 78 F.3d 348, 351 (8th Cir. 1996); Coe v. Thurman, 922 F.2d 528, 532 (9th Cir. 1990); Harris II, 15 F.3d at 1547.

---

instances, it was that very counsel who was responsible for the delay.  Under these circumstances, we cannot fairly expect petitioners to have raised the issue of delay in state court.").

21

United States v. Moreno Jr., No. 04-0698/MC

a.  Oppressive Incarceration Pending Appeal

This sub-factor is directly related to the success or failure of an appellant's substantive appeal.  If the substantive grounds for the appeal are not meritorious, an appellant is in no worse position due to the delay, even though it may have been excessive.  Cody v. Henderson, 936 F.2d 715, 720 (2d Cir. 1991).  Under these circumstances, an appellant would have served the same period of incarceration regardless of the delay.  United States v. Antoine, 906 F.2d 1379, 1382 (9th Cir. 1990).  However, if an appellant's substantive appeal is meritorious and the appellant has been incarcerated during the appeal period, the incarceration may have been oppressive.  Coe, 922 F.2d at 532.

Moreno served his full term of confinement before his appeal of right was resolved by the Court of Criminal Appeals.  Before this court he has prevailed on a substantive appellate issue, his conviction will be set aside and he is entitled to a retrial.  As the Fifth Circuit has noted:

> Moreover, if an appeal is not frivolous, a person convicted of a crime may be receiving punishment the effects of which can never be completely reversed or living under the opprobrium of guilt when he or she has not been properly proven guilty and may indeed be innocent under the law.

Rheuark, 628 F.2d at 304.[14]

---

[14] "A system of appeal as of right is established precisely to assure that only those who are validly convicted have their

Moreno was sentenced to six years of incarceration. Although the record does not provide us with a precise release date, we can be reasonably certain that Moreno was released from confinement prior to the Court of Criminal Appeals' decision. Based on the 150 days of pretrial confinement credit and the duration of the adjudged confinement, we estimate that Moreno's minimum release date was about April, 2003. Thus, he had served at least four years in confinement, under a conviction that has now been set aside, prior to his appeal of right being decided. We therefore find that he has suffered some degree of prejudice as the result of oppressive incarceration.[15]

b.  Anxiety and Concern

This sub-factor involves constitutionally cognizable anxiety that arises from excessive delay. Federal courts have adopted different approaches to this "prejudice" sub-factor. The Second Circuit has affirmed district court decisions which found anxiety-based prejudice that arose solely from the length of the delay. Yourdon v. Kelly, 969 F.2d 1042 (2d Cir.

---

freedom drastically curtailed." Evitts v. Lucey, 469 U.S. 387, 399-400 (1985).

[15] We note that this factor (oppressive incarceration) would weigh heavily against the Government if the incarceration relates to a finding that a Court of Criminal Appeals reverses for factual insufficiency. See Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 39 (C.A.A.F. 2003) ("Unlike the civilian criminal justice system, the Courts of Criminal Appeals have unique fact finding authority, and that aspect of a

United States v. Moreno Jr., No. 04-0698/MC

1992)(table decision), aff'g 769 F. Supp. 112, 115 (W.D.N.Y.

1991); Snyder v. Kelly, 972 F.2d 1328 (2d Cir. 1992)(table

decision), aff'g 769 F. Supp. 108, 111 (W.D.N.Y. 1991).[16]

The Ninth Circuit requires a showing of "particular

anxiety", which must be distinguished from the normal anxiety

experienced by any prisoner awaiting an appellate decision.

Antoine, 906 F.2d at 1383; see also Coe, 922 F.2d at 532.  The

Third Circuit requires an appellant "to detail anxiety related

to the processing of his case post-conviction."  Burkett v.

Fulcomer, 951 F.2d 1431, 1447 (3d Cir. 1991).  The Tenth Circuit

requires a "particularized and substantial showing of anxiety

and concern, absent a delay so excessive as to trigger the

Doggett presumption of prejudice."  Harris II, 15 F.3d at 1565.

While some circuits require that an appellant have a

meritorious appeal to prevail on this sub-factor, see id.,

others have recognized anxiety arising from excessive delays

regardless of whether the appellant prevails on a substantive

---

servicemember's case is not concluded until that review is
completed.").
[16] Those district courts and the Second Circuit have found that
the more appropriate remedy for anxiety-based prejudice arising
from excessive appellate delay is an action for damages under 42
U.S.C. § 1983 (2000).  Cody v. Henderson, 936 F.2d 715, 720 (2d
Cir. 2000).  We recognize that military service members are
unable to pursue relief under 42 U.S.C. § 1983 as a result of
the extended Feres v. United States, 340 U.S. 135 (1950),
doctrine.  Chappell v. Wallace, 462 U.S. 296, 304 (1983).

24

issue.[17]  We believe that the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision. This particularized anxiety or concern is thus related to the timeliness of the appeal, requires an appellant to demonstrate a nexus to the processing of his appellate review, and ultimately assists this court to "fashion relief in such a way as to compensate [an appellant] for the particular harm."  Burkett, 951 F.2d at 1447.  We do not believe that the anxiety that an appellant may experience is dependent upon whether his substantive appeal is ultimately successful.  An appellant may suffer constitutionally cognizable anxiety regardless of the outcome of his appeal.

Moreno argues that he suffered prejudice because he was required to register as a sex offender upon his release from incarceration without the opportunity of having his appeal of right heard and decided.  See 42 U.S.C. § 14071(a)(1)(A), (b)(6)(A) (2000).  Moreno essentially argues that had his appeal been processed in a timely manner, it would have been resolved

---

[17] Snyder v. Kelly, 769 F. Supp. 108, 111 (W.D.N.Y. 1991) (where conviction affirmed, court noted, "While he has not presented any evidence of prejudice to the appeal itself, it would not strike this Court as unusual that a five-year delay would profoundly worry an individual hopefully awaiting an ultimate appellate reversal").

before his release from incarceration. Had Moreno's conviction been affirmed prior to his release, registration as a sex offender would have been a proper consequence of his conviction. However, Moreno argues that he has been "living under the opprobrium of guilt when he . . . has not been properly proven guilty and may indeed be innocent under the law." Rheuark, 628 F.2d at 304. The excessive delay in this case and our disposition of the implied bias issue lend credence to Moreno's claim that he was prejudiced by the requirement to register as a sex offender. We find that this circumstance constitutes constitutional anxiety that is distinguishable from the normal anxiety experienced by prisoners awaiting appeal and that as a result Moreno has suffered some degree of prejudice.

c. Impairment of Ability to Present a Defense at a Rehearing

This final sub-factor is directly related to whether an appellant has been successful on a substantive issue of the appeal and whether a rehearing has been authorized. If an appellant does not have a meritorious appeal, there obviously will be no prejudice arising from a rehearing. If, however, a conviction has been set aside and a rehearing authorized, the appellate delay encountered by the appellant may have a negative impact on his ability to prepare and present his defense at the rehearing. Due to the passage of time, witnesses may be

unavailable, memories may have faded and records of trial may have been misplaced or lost.

In order to prevail on this factor an appellant must be able to specifically identify how he would be prejudiced at rehearing due to the delay.[18]  Mere speculation is not enough. United States v. Mohawk, 20 F.3d 1480, 1487 (9th Cir. 1994). Moreno claims that prejudice exists under this factor because of the potential harm he would suffer in the event he is successful on appeal and a rehearing is authorized.  He does not, however, identify any specific harm that he would encounter at a rehearing and he has therefore failed to establish prejudice under this sub-factor.[19]

---

[18] A requirement that an appellant demonstrate prejudice is not a unique requirement.  See United States v. Chatman, 46 M.J. 321, 323-24 (C.A.A.F. 1997) (the court required an appellant "demonstrate prejudice [from new matter in a staff judge advocate's addendum] by stating what, if anything, would have been submitted to 'deny, counter, or explain' the new matter."); United States v. Moulton, 47 M.J. 227, 229 (C.A.A.F. 1997) (a defendant who claims ineffective assistance of counsel must show that a counsel's deficient performance was "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984))).

[19] We are mindful of the difficulty that an appellant and his appellate defense counsel may have at this juncture of the process in identifying problems that would hinder an appellant's ability to present a defense at rehearing.  If an appellant does experience problems in preparing for trial due to the delay, a Sixth Amendment speedy trial motion could appropriately be brought at the trial level.  "[W]e are inclined to believe that a consideration of the Sixth Amendment speedy trial right in its most pristine sense would be triggered by any retrial of such a person.  The consideration would, of course, be an ad hoc

27

Conclusion -- Barker Factors

Because of the unreasonably lengthy delay, the lack of any constitutionally justifiable reasons for the delay, and the prejudice suffered by Moreno as a result of oppressive incarceration and anxiety, our balancing of the four Barker factors leads us to conclude that Moreno was denied his due process right to speedy review and appeal. Because we have found legal error and substantial prejudice to a material right, as well as a deprivation of due process, we need to consider appropriate relief. See Jones, 61 M.J. at 86.

Before we turn to that consideration, we address post-trial processing standards in the military justice system. Our concern for post-trial timeliness has been heightened by the number of appellate delay cases that have come before this court and cases that are pending elsewhere in the military justice system. In recognition of the due process issues involved in timely post-trial review and appeal and in response to the cases giving rise to our concerns, we will establish post-trial processing standards to be applied to cases yet to enter the post-trial and appellate processes.

Post-Trial Processing Standards

In 1974 this court adopted a "presumption of a denial of speedy disposition of the case" if a convening authority failed

determination based on the four factors of Barker." Rheuark,

to take action within ninety days of trial.  Dunlap, 23 C.M.A.

at 138, 48 C.M.R. at 754.  Five years later this court abandoned

that rule and expressed confidence that military justice had

overcome the numerous circumstances giving rise to that rule:

> Dunlap came in response to a problem which frequently manifested itself where the convening authority delayed his final action.  See generally United States v. Jefferson, 22 U.S.C.M.A. 554, 48 C.M.R. 39 (1973); United States v. Gray, 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973); United States v. Timmons, 22 U.S.C.M.A. 226, 46 C.M.R. 226 (1973); United States v. Wheeler, 21 U.S.C.M.A. 468, 45 C.M.R. 242 (1972); United States v. Whitmire, 21 U.S.C.M.A. 268, 45 C.M.R. 42 (1972); United States v. Davis, 20 U.S.C.M.A. 541, 43 C.M.R. 381 (1971); United States v. Prater, 20 U.S.C.M.A. 339, 43 C.M.R. 179 (1971).  However, convicted service persons now enjoy protections which had not been developed when Dunlap was decided.  For example, in United States v. Palenius, 2 M.J. 86 (C.M.A. 1977), we announced duties on the part of the trial defense attorney which are designed to insure a continuous, uninterrupted representation of the convicted accused service person.  Performance of those functions may well remove the causes which concerned the Dunlap Court.  And in United States v. Brownd, 6 M.J. 338 (C.M.A. 1979) we announced standards by which applications for deferment of sentence are to be judged in appropriate cases.  Thus the serviceman awaiting final action by the convening authority may avail himself of remedies during the pendency of review which were not clear when Dunlap was decided.

United States v. Banks, 7 M.J. 92, 93 (C.M.A. 1979).  See also

United States v. Kossman, 38 M.J. 258, 261 (C.M.A. 1993)

---

628 F.2d at 303 n.8.

United States v. Moreno Jr., No. 04-0698/MC

(eliminating the ninety-day rule for bringing a servicemember to trial when that member is in pretrial confinement).

Unfortunately, our confidence that procedural protections would suffice to ensure the speedy post-trial and appellate rights of servicemembers has been eroded. It is of some concern that the Government brief asserts that the 1,688 day delay in this case was reasonable.[20] We reject that contention and note that Moreno's case is not an isolated case that involves excessive post-trial delay issues.[21]

This increase in processing time stands in contrast to the lower number of cases tried in the military justice system in recent years. Our separate system of military justice often provides different or diminished constitutional rights in light of the need for prompt disposition of disciplinary matters. It follows then, as this court has noted, that the unique nature of review under Article 66(c), UCMJ, "calls for, if anything, even greater diligence and timeliness than is found in the civilian system." Diaz, 59 M.J. at 39.

---

[20] "[T]he facts show the post-trial processing of Appellant's case has been reasonable, if not expeditious."

[21] See United States v. Oestmann, 61 M.J. 103 (C.A.A.F. 2005); United States v. Jones, 61 M.J. 80 (C.A.A.F. 2005); Rodriguez-Rivera v. United States and The Judge Advocate General of the Navy, 61 M.J. 19 (C.A.A.F. 2005); United States v. Toohey, 60 M.J. 100 (C.A.A.F. 2003); Diaz, 59 M.J. 34; United States v. Tardif, 57 M.J. 219 (C.A.A.F. 2002).

We believe that adopting the Doggett presumption of prejudice is unnecessary at this point. We can deter these delays and address the systemic delays we see arising in post-trial and appellate processing through less draconian measures. See Simmons, 898 F.2d at 869. Although we do not foreclose the possibility that presumptions of prejudice may yet prove necessary, we do not believe it is necessary to adopt such a presumption at this juncture.

Nonetheless, some action is necessary to deter excessive delay in the appellate process and remedy those instances in which there is unreasonable delay and due process violations.[22] For courts-martial completed thirty days after the date of this opinion, we will apply a presumption of unreasonable delay that will serve to trigger the Barker four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial. We will apply a similar presumption of unreasonable delay for courts-martial completed thirty days after the date of this opinion where the record of trial is not

---

[22] We are mindful of the importance of providing a deterrent to improper Government action, including actions that delay post-trial and appellate processing. One such very significant deterrent, the exclusionary rule, was developed to protect not only the constitutional rights of individuals accused of crime, but also the integrity of and respect for the criminal justice system. See Mapp v. Ohio, 367 U.S. 643, 655 (1961). The exclusionary rule emphasizes that constitutional rights have meaning and a deprivation of those rights has ramifications. See Marc M. Arkin, Speedy Criminal Appeal: A Right Without A Remedy, 74 Minn. L. Rev. 437, 459-60 (1990).

31

docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action.

For those cases arriving at the service Courts of Criminal Appeals thirty days after the date of this decision, we will apply a presumption of unreasonable delay where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals. These presumptions of unreasonable delay will be viewed as satisfying the first Barker factor and they will apply whether or not the appellant was sentenced to or serving confinement. It is important to note that the presumptions serve to trigger the four-part Barker analysis -- not resolve it. The Government can rebut the presumption by showing the delay was not unreasonable. By using these presumptions we trigger an appellate analysis and allocate the burden; we do not legislate or undermine the President's rulemaking authority under Article 36, UCMJ, 10 U.S.C. § 836 (2000).

Some cases will present specific circumstances warranting additional time, thus making those periods reasonable upon assessment of the Barker factors. But these must be justifiable, case-specific delays supported by the circumstances of that case and not delays based upon administrative matters, manpower constraints or the press of other cases. We expect convening authorities, reviewing authorities and the Courts of

Criminal Appeals to document reasons for delay and to exercise the institutional vigilance that was absent in Moreno's case.

Once the four-factor analysis is completed and those factors balanced, reviewing authorities that find a denial of speedy post-trial or appeal "should 'tailor an appropriate remedy, if any is warranted, to the circumstances of the case.'" Jones, 61 M.J. at 86 (quoting United States v. Tardif, 57 M.J. 219, 225 (C.A.A.F. 2002)). The nature of that relief will depend on the circumstances of the case, the relief requested, and may include, but is not limited to: (a) day-for-day reduction in confinement or confinement credit; (b) reduction of forfeitures; (c) set aside of portions of an approved sentence including punitive discharges; (d) set aside of the entire sentence, leaving a sentence of no punishment; (e) a limitation upon the sentence that may be approved by a convening authority following a rehearing; and (f) dismissal of the charges and specifications with or without prejudice. Clearly this range of meaningful options to remedy the denial of speedy post-trial processing provides reviewing authorities and courts with the flexibility necessary to appropriately address these situations on a case-by-case basis.[23]

---

[23] Post-trial delay cases that arise in Article III courts do so in the context of a writ of habeas corpus with relief generally limited to dismissal of the charges. As we generally review the issue of post-trial delay on direct appeal, we have a number of remedies not available to Article III courts.

United States v. Moreno Jr., No. 04-0698/MC

Those cases tried or received at a Court of Criminal Appeals prior to the date of this opinion and therefore not encompassed by the foregoing presumptions of unreasonable delay will continue to be reviewed on a case-by-case basis under the Barker due process analysis.  Delays have been tolerated at all levels in the military justice system so much so that in many instances they are now considered the norm.  The effect of this opinion is to provide notice that unreasonable delays that adversely impact an appellant's due process rights will no longer be tolerated.

Relief in Moreno's Case

In Moreno's case, a rehearing is the appropriate remedy for the military judge's erroneous denial of the challenge for cause against LtCol F.  In considering the range of options to address the denial of Moreno's due process right to speedy review and appeal, we considered directing a day-for-day credit for each day of unreasonable and unexplained delay.  Such a credit would have no meaningful effect, however, as Moreno served the full term of adjudged confinement after his initial trial.

We have also considered dismissing the charge and specification with prejudice.  Dismissal would be a consideration if the delay either impaired Moreno's ability to defend against the charge at a rehearing or resulted in some other evidentiary prejudice.  See Tardif, 57 M.J. at 224 (citing

34

United States v. Moreno Jr., No. 04-0698/MC

United States v. Timmons, 22 C.M.A. 226, 227, 46 C.M.R. 226, 227 (1973); United States v. Gray, 22 C.M.A. 443, 445, 47 C.M.R. 484, 486 (1973)).  We find no such evidence before us.  Finally, because we must set aside the sentence in order to permit a rehearing, there is no direct sentence relief that we can afford to Moreno.  Compare Jones, 61 M.J. at 86 (this court formulated a remedy for prejudicial denial of speedy appellate review where neither the adjudged sentence nor the convening authority's action were to be set aside).

We are not, however, without power to effect appropriate relief in this case.  Should there be a rehearing resulting in a conviction and new sentencing, we believe that limiting the sentence that may be approved by the convening authority will adequately afford Moreno relief for the deprivation of his speedy appellate review due process rights.

### DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed.  The findings and sentence are set aside and a rehearing may be ordered.  In the event that a rehearing is held resulting in a conviction and sentence, the convening authority may approve no portion of the sentence exceeding a punitive discharge.

35

<u>United States v. Moreno</u>, No. 04-0698/MC

CRAWFORD, Judge (concurring in part and dissenting in part):

I respectfully dissent because the majority: (1) usurps the role of Congress and the President, as delegated by Congress to the executive branch by Article 36, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 836 (2000), by establishing prospective rules setting forth timelines for the post-trial processing of cases in the military justice system; and (2) misapplies the speedy trial balancing factors of <u>Barker v. Wingo</u>, 407 U.S. 514, 529-33 (1972).

I agree with the majority that the military judge should have granted the challenge for cause, and thus concur in the result.

I. Separation of Powers

A. <u>History</u>

The wisdom of our Founding Fathers is reflected in the process and procedures they established in the Constitution. To prevent centralization of power, the Founding Fathers established three branches of government, each with its own rules, powers, and responsibility, and serving as a check on each other rather than one exercising the role of two branches of government. As James Madison said, "There can be no liberty . . . if the power of judging be not separated from the legislative and executive powers." <u>The Federalist No. 47</u>, at

302 (James Madison) (Clinton Rossiter ed., 1961).  Accordingly, Madison cited the "oracle" Montesquieu for the admonition of our Founding Fathers that the "preservation of liberty requires that the three great departments of power should be separate and distinct."  Id. No. 47, at 301 (James Madison).  In separating the powers of the departments of the federal government, the Founding Fathers established a system of checks and balances "by so contriving the interior structure of the government as that its several constituent parts may, by their mutual relations, be the means of keeping each other in their proper places.  Id. No. 51, at 320 (James Madison).

B.  Congressional Delegation

Under Article 36, UCMJ, Congress has delegated to the President the power to prescribe rules for post-trial procedures.  By establishing prospective rules setting forth timelines for post-trial processing, the majority assumes the role delegated to the President by Congress in Article 36, UCMJ, in contravention of the constitutional separation of powers doctrine.

In Barker v. Wingo, the Supreme Court rejected judicial rulemaking to specify a time period for when a defendant will be offered a trial.  407 U.S. at 523.  The Court concluded that setting out a time period to identify when the speedy trial right has been infringed would require the Court "to engage in

2

legislative or rulemaking activity, rather than in the adjudicative process to which [the Court] should confine [its] efforts." Barker, 407 U.S. at 523. The Court reasoned its "approach must be less precise" and that it should not establish procedural rules because there is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." Id. In creating specific timelines that, if violated, equate to unreasonable delay, the majority is essentially modifying the Rules for Courts-Martial (R.C.M.) and attempting to assume the role of the President in violation of separation of powers principles.

## II. Post-Trial Delay

### A. General

While the Supreme Court has not addressed the issue of whether the Constitution guarantees a right to a speedy appeal, the lower federal courts and this Court have. "The speedy trial guarantee of the Sixth Amendment applies only to proceedings in the trial court. Our sister circuits have held, however, that a similar guarantee applies to criminal appeals via the Due Process Clause." United States v. Smith, 94 F.3d 204, 206 (6th Cir. 1996) (citations omitted). The right to a speedy trial is guaranteed an accused by the Sixth Amendment. The Due Process Clause provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S.

Const. amend. V. An appellant's right to a speedy appellate review evolves from an appellant's due process rights under the Fifth Amendment. Harris v. Champion, 15 F.3d 1538, 1558 (10th Cir. 1994). When examining these constitutional rights, we must look at the text, the history, the tradition behind the constitutional amendments, prior precedent, and practical consequences. See County of Sacramento v. Lewis, 523 U.S. 833, 857 (1998) (must consider "history and tradition"); United States v. Mara, 410 U.S. 19, 37 (1973) (must examine the teachings of history and tradition).

The federal courts have recognized that generally "there is no due process right to an appeal at all, but that an appeal must nonetheless comport with due process 'if a State has created appellate courts as an integral part' of its criminal justice system." Smith, 94 F.3d at 206-07 (quoting Harris, 15 F.3d at 1558) (internal quotation marks omitted). The courts considering this issue have conducted a case-by-case basis analysis, applying a modified version of the four factors of Barker to determine whether the delay in an appeal violated an appellant's due process rights to a speedy post-trial review. These four factors are: (1) length of the delay; (2) reasons for the delay; (3) the appellant's assertion of his right to a timely appeal; and (4) prejudice to appellant. Barker, 407 U.S. at 529-33.

4

In Barker, the Supreme Court adopted a "balancing test" approach in evaluating these factors in speedy trial violations "in which the conduct of both the prosecution and the defendant are weighed." Barker, 407 U.S. at 530. The "balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis." Id. None of these four factors is "a necessary or sufficient condition to finding of a deprivation of the right of speedy trial." Id. at 533. Courts must engage in the "difficult and sensitive balancing process" of all of the factors in evaluating whether a post-trial delay violates an appellant's due process. See id. at 533.

In Toohey v. United States, 60 M.J. 100, 102 (C.A.A.F. 2004), this Court recognized that servicemembers have a due process right to speedy appellate review and used modified Barker factors to evaluate whether appellate delay violates an appellant's due process rights. See also Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 37-38 (C.A.A.F. 2003) (servicemembers have a right to have their cases reviewed in a timely fashion).

Courts have viewed appellate delays differently than trial delays. "[N]ot every delay in the appeal of a case, even an inordinate one, violates due process." Rheuark v. Shaw, 628 F.2d 297, 303 (5th Cir. 1980). Most federal courts have not created a "benchmark" for triggering a presumption of prejudice.

But see Harris, 15 F.3d at 1559-60 (Tenth Circuit has held that a two-year appellate delay will create a rebuttable presumption that the constitutional threshold has been crossed). See also Barker, 407 U.S. at 523 (Court specifically rejected establishing a specified time period to bring a defendant to trial). The federal courts evaluate the peculiar circumstances of each case to determine whether the length of the delay provokes a constitutional inquiry. "[U]nless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, 'there is no necessity for inquiry into the other factors that go into the balance.'" Smith, 94 F.3d at 209 (quoting Barker, 407 U.S. at 530). "[I]f the constitutional inquiry has been triggered, the length of delay is itself balanced with the other factors" in the Barker analysis. Id. In extreme circumstances, the length of delay may give rise to a strong "presumption of evidentiary prejudice" to a defendant's ability to defend himself at trial. See Doggett v. United States, 505 U.S. 647, 655-57 (1992).[1] But see Smith, 94 F.3d. at 212-13 ("We deem Doggett relevant, but we hold that the presumption of prejudice, if any, in this case of three-year appellate delay has been clearly rebutted.") (emphasis added).

---

[1] Under the Doggett presumption of prejudice analysis, if the delay triggers the Barker analysis, there is a presumption of prejudice and "the only question is how much 'importance' to assign to that prejudice." Smith, 94 F.3d at 212.

6

B.  Applying the Barker Analysis to This Case

1.  Length of the Delay

In this case, there has been delay of nearly 1,700 days between the completion of Appellant's court-martial and the Court of Criminal Appeals' decision.  On its face, this delay is sufficient to trigger an inquiry using the Barker analysis.

2.  Reasons for the Delay

Although there were significant delays at all phases of the post-trial process in this case, the greatest portion of that delay involves the period from when the case was docketed at the Court of Criminal Appeals until the briefing was complete.  It is the majority's conclusion regarding this period of delay with which I have the greatest disagreement.  The appellate defense counsel requested and was granted eighteen enlargements of time in which to file a brief.  The reason stated for enlargements four through eighteen was "other case load commitments."  The majority refuses to hold Appellant accountable for any portion of this delay even though neither Appellant nor his defense counsel requested assistance within the appellate division or outside the appellate division from outside contractors or other services' appellate divisions to process this appeal.  Despite the lack of a request for assistance because of "case load commitments," incredibly, the majority concludes "there was no

7

evidence demonstrating that the enlargements were directly attributable to Moreno."

In my view, unless the appellate defense counsel was ineffective or was acting unethically or outside the scope of his authority, the actions he took to obtain additional delays in the filing of the appellate briefs were performed for and on behalf of Appellant. Presumably, appellate defense counsel filed requests for delays with the knowledge of Appellant because a reasonably effective counsel would have communicated with his client. The majority ultimately lays the blame for the delay at the feet of the Court of Criminal Appeals. It holds that regardless of the appellate defense counsel's case load problems, the Courts of Criminal Appeals are responsible for the "timely management and disposition of cases docketed at the Courts of Criminal Appeals."

This case reinforces the wisdom of the federal and state courts placing the burden on Appellant to show prejudice. There are a number of questions to be asked of defense counsel -- What other cases did you have? How did you stagger them? Did you prioritize the cases? What issues were present? What were the difficulties in contacting Appellant? Was there a conflict in Appellant's wishes and your desires? Did you request assistance from your supervisor?

United States v. Moreno, No. 04-0698/MC

The Government is simply not in a position to answer questions as to why the defense counsel asked for extended delays.  See United States v. Lewis, 42 M.J. 1 (C.A.A.F. 1995). Nor can the Government answer questions regarding the impact of the requested delays on the strategy, theories, or theme of the defense.  Yet, contrary to the prevailing jurisprudence of federal and state courts, the majority relieves Appellant from his burden of demonstrating actual prejudice and incredibly shifts the responsibility for the delay to the Government. Thus, the majority has created an incentive for the defense to request enlargements knowing they will not be asked these questions absent a court order.

Delay must be examined on the basis of the facts in a specific case and not based on the length of delay alone.  In fact, merely asking for numerous delays has ended up benefiting Appellant.  Based on the majority decision, I predict that appellate courts will receive many more requests for enlargements from appellate defense counsels in order to get the benefit of the presumption of unreasonable delay in a speedy appellate review scenario.  It is incredible that while recognizing this lengthy period of time is attributable to the appellate defense counsel's requests for delay, the majority declines to hold Appellant accountable for any of it.

   3.  Appellant's Assertion of His Right to a Timely Appeal

   Appellant never asserted a post-trial speedy review right
or protested the length of delay in his case.  While the demand
rule is not conclusive in the speedy trial or appellate review
context, it is extremely important in evaluating the length and
reason for the delay as well as whether there is any personal
prejudice.  Barker, 407 U.S. at 531.  A complaint or protest
would have at least indicated to the appellate court that
Appellant was dissatisfied with the pace of his appeal.  The
determination of whether an appellant asserts his right to a
speedy post-trial review is "entitled to strong evidentiary
weight in determining whether [an appellant] is being deprived
of the right."  Id. at 532-33.  The "failure to assert the right
will make it difficult for [an appellant] to prove he was denied
a speedy trial" review.  Id. at 532.

   This factor becomes more significant when there are a
number of options open to counsel and an appellant to complain
about the delay.  These options could ensure expediting the
appeal to avoid any possible violation of post-trial delay.  In
this case, there is no indication that Appellant made efforts to
prod appellate defense counsel or anyone else to expedite his
appeal.  Yet the majority shifts the responsibility for the
entire period of delay onto the Government in spite of the

requests for delay by Appellant through his appellate defense counsel.

What is the Government to do?  Oppose defense requests for delay because the delay will be attributed to it?  Should the Courts of Criminal Appeals deny defense requests for delays for fear the delays will be attributed to it or the Government? What is next?  Will we begin to see appellate defense counsel raise the issue that an appellant was denied an opportunity to present his case on appeal because his reasonable request for a delay for filing his brief was denied?

Although the Supreme Court rejected the rule that a "defendant who fails to demand a speedy trial forever waives his right," the Court did state that "[t]his does not mean, however, that the defendant has no responsibility to assert his right." Barker, 407 U.S. at 528.  The principle set out in Barker is that an appellant's "assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the [speedy trial] right."  Id. at 529.  The application of this formula allows the courts judicial discretion based on the circumstances as opposed to the application of some rigid rule that does not provide for consideration of the circumstances of the case.  In its opinion, the majority in effect overlooks any application of this factor to the facts of this case even though it is a factor in the

*Barker* analysis.  Thus, I disagree with the majority and the weight, or lack thereof, they give to the absence of an assertion of the right to a speedy post-trial review.

    4.  Prejudice to Appellant

With respect to assessing the fourth factor -- prejudice -- the Supreme Court provided further guidance.  Prejudice should be evaluated "in the light of the interests of defendants which the speedy trial right was designed to protect."  *Barker*, 407 U.S. at 532.  The interests are:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Id.*

Lower courts applying the *Barker* test to appellate delay have adapted the prejudice factors to fit the circumstances of convicted parties on appeal:  "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired."  *Harris*, 15 F.3d at 1559 (quoting *Rheuark*, 628 F.2d at 303 n.8).

12

a.  Prevention of Oppressive Incarceration Pending Appeal

Generally, incarceration will be considered "oppressive" if an appellant is confined while the appeal is pending and the substantive appeal is meritorious.  See Cody v. Henderson, 936 F.2d 715, 719-21 (2d Cir. 1991).  In this case, the meritorious issue addressed by the Court concerns the denial of a challenge for cause against a court member.  There were no successful issues regarding the sufficiency of evidence or the admissibility of evidence.  Theoretically, the Government will be able to use the same evidence used at the original trial to retry Appellant.  There is no way, based on the facts and evidence in this case, to conclude that Appellant's incarceration was oppressive or out of the ordinary for a person convicted of an offense and sentenced to confinement.

Furthermore, Appellant was sentenced to six years of confinement.  The majority, without any documentary evidence on which to rely, theorizes that Appellant was released from confinement after about four years of confinement.  Assuming the majority is correct, apparently the delay in the appeal of Appellant's case did not affect his ability to obtain a minimum release date and to be released from confinement when that date was reached.  Without knowing the outcome of the retrial, it is only supposition as to whether Appellant's incarceration was excessive or oppressive.

United States v. Moreno, No. 04-0698/MC

    b.   <u>Minimization of Anxiety and Concern While Awaiting</u>
<u>Outcome of Appeal</u>

    I agree with the majority that "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision" and that the anxiety is not "dependent upon whether his substantive appeal is ultimately successful." I disagree with the majority's conclusion that Appellant's anxiety was "distinguishable" because he had to register as a sex offender upon his early release from confinement.  This consequence of Appellant's conviction has been deemed a collateral consequence of a conviction by numerous courts and will not generally merit relief in those situations where an appellant proceeds to trial without knowledge of such a consequence.  <u>See</u> <u>State v. Young</u>, 542 P.2d 20 (Ariz. 1975); <u>Ray v. State</u>, 982 P.2d 931 (Idaho 1999); <u>State v. Schneider</u>, 640 N.W.2d 8 (Neb. 2002); <u>Davenport v. State</u>, 2000 ND 218, 620 N.W.2d 164; <u>Mitschke v. State</u>, 129 S.W.3d 130 (Tex. Crim. App. 2004); <u>State v. Bollig</u>, 2000 WI 6, 232 Wis. 2d 561, 605 N.W.2d 199; <u>State v. Ward</u>, 869 P.2d 1062 (Wash. 1994); <u>Johnson v. State</u>, 922 P.2d 1384 (Wyo. 1996).

    How the majority can now classify a sex offender registration requirement as "distinguishable" anxiety is beyond

comprehension. The record contains no information concerning the requirements for sexual offender registration in the state of California where Appellant resides, and what, if anything, will happen regarding the registration requirement for Appellant after the findings in his case are set aside and he is awaiting a new trial. The majority simply latches on to the assertion in Appellant's brief that he had to register as a sex offender upon his release from confinement without any proof of registration or what the effects of setting aside the conviction and retrying Appellant would have on that requirement.

   c.  Limitation of Appellant's Grounds for Appeal or Defenses at Retrial

   The most serious factor in analyzing the prejudice factor is evaluating the ability of an appellant to assert:  (i) his or her arguments on appeal; and (ii) his or her defense in the event of retrial or resentencing. See Barker, 407 U.S. at 532; Harris, 15 F.3d at 1563. See also Smith, 94 F.3d at 211 (question is whether the delayed ruling by the appellate court actually preserved any arguments the appellant would have asserted on retrial or resentencing and whether Appellant's ability to assert these arguments was affected).

In this case, Appellant failed to establish any harm to his ability to present a defense or retry his case.[2] The substantive issue raised by Appellant related to the military judge's denial of a challenge for cause against a panel member. It was a technical issue and did not relate to the presentation of the facts, the evidence, or defenses at trial. There is no danger to any of his potential arguments or ability to present a defense. At a retrial, the court member issue in this case will be cured.

As to prejudice generally, one must recognize the difference between pretrial delay prejudice and post-trial delay prejudice. Pretrial delay prejudice involves planning a defense at trial with live witnesses who may not have committed their testimony either to an oral or written form. "When a full trial has occurred, even if there is an inordinate post-trial delay, the record of trial is preserved" and an appellant must make some showing of prejudice to establish a due process violation. Latimore v. Spencer, 994 F. Supp. 60, 71 (D. Mass. 1998). In post-trial delay cases, there has been a conviction. Thus, the same anxiety that might occur in a pretrial scenario does not occur to the same extent in the post-trial scenario because the defendant is no longer cloaked with the presumption of

---

[2] The majority acknowledges that Appellant failed to "identify any specific harm that he would encounter at a rehearing" and that he "failed to establish prejudice under this sub-factor."

innocence.  Likewise, the concern that pretrial delay may affect the defendant's ability to mount a defense because memories will dim or witnesses will become unavailable is not a concern with post-trial delay.

In the post-trial scenario, the defendant has been convicted after a full-fledged adversary proceeding and is given a complete verbatim copy of the record, together with appointed counsel and a right to appeal the case when the sentence extends to one year of confinement and/or a punitive discharge. Appellate review of military cases is much broader than in the civilian sector because the intermediate civilian appellate court has no factfinding capability.  This procedure is essential because it allows defendants to have a fair chance to present persuasive arguments during the appellate process.

Appellate defense counsel have at their disposal the means of identifying any prejudice that might otherwise arise from the passage of time.  If witnesses are not available, their former testimony can be introduced under Military Rule of Evidence (M.R.E.) 804(b)(1) and M.R.E. 801(d)(1)(A) and (B) or M.R.E. 803(5).  Likewise, if memories fade, they can be refreshed under M.R.E. 612.  If there is a change in testimony, the parties have a right to impeach the witness.  M.R.E. 613.  This verbatim record obviates most of the problems of retrials.  Absent a showing at a United States v. DuBay, 17 C.M.A. 147, 37 C.M.R.

17

411 (1967), or motion hearing that Appellant is unable to present a defense, or collect exculpatory evidence as a result of the excessive delay, the charges should not be dismissed. See also State v. Hall, 487 A.2d 166 (Vt. 1984) (defendant has burden of showing substantial prejudice because of the delay).

The most problematic aspect of the majority's opinion is its application of the Barker prejudice factor. Appellant and the majority in this case merely speculate as to the potential harm. Rather than placing the burden on Appellant to show prejudice, the majority is intent on placing the responsibility for the delay on the Courts of Criminal Appeals. According to the holding of the majority, the Courts of Criminal Appeals have the responsibility for "the timely management and disposition of cases" regardless of whether an appellant in fact suffers prejudice as a result of post-trial delay, whether an appellant makes efforts to foster the delay, or does nothing to assert his right to a speedy review. The prejudice factor is the most critical factor in evaluating whether Appellant's due process right to a speedy appellate review has been violated, yet the majority gives this factor short shrift. I would conclude that Appellant has not met his burden to demonstrate actual prejudice by this post-trial delay.

        III.  The Reality of the Application of
          the Majority's Specified Time Period

     The majority does not adopt a "presumption of prejudice"

but a prospective "presumption of unreasonable delay" if certain

timelines are not met.  The majority sets forth a "presumption

of unreasonable delay" to be triggered by the following events:

     (1) No action by convening authority within "120 days of

the completion of trial";

     (2) Case not docketed with the service Court of Criminal

Appeals within "thirty days" of convening authority's action;

and

     (3) No decision by the service Court of Criminal Appeals

rendered within "eighteen months of docketing the case."

     Once the timeline is violated, the "presumption of

unreasonable delay" will exist, which will satisfy the first

Barker factor regardless of whether an appellant is sentenced to

or serving confinement.  The timeline violation will then

trigger the Barker four-factor analysis.  Any delay beyond the

time periods established must be "justifiable, case-specific

delays supported by the circumstances of that case and not

delays based upon administrative matters, manpower constraints

or the press of other cases."

     The majority stands presumptions on their heads, failing to

appreciate which party has the privileged information.  By

19

shifting the responsibility to the Government rather than requiring an appellant to demonstrate actual prejudice, the Court overlooks that the evidence of prejudice is peculiarly within an appellant's control. Raising denial of due process because of appellate delay does not constitute the waiver of the attorney-client privilege and therefore puts the Government in a very awkward position. This is why federal and state courts have placed the burden on the appellant to show actual prejudice.[3]

The majority has established a nonexclusive list of potential remedies for those situations where a reviewing court determines there is a denial of speedy post-trial or appellate review. The remedy is supposed to be tailored to the circumstances of the case:

> The nature of that relief will depend on the circumstances of the case, the relief requested, and may include, but is not limited to: (a) day-for-day reduction in confinement or confinement credit; (b) reduction of forfeitures; (c) set aside of portions of an approved sentence including punitive discharges;

---

[3] The Georgia Supreme Court recently concluded:

> [P]rejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing.

Chatman v. Mancill, 626 S.E.2d 102, 109-10 (Ga. 2006). See also Lopez v. State, 769 P.2d 1276, 1288-89 (Nev. 1989).

(d) set aside of an entire sentence, leaving a sentence of no punishment; (e) a limitation upon the sentence that may be approved by a convening authority following a rehearing; and (f) dismissal of the charges and specifications with or without prejudice. Clearly this range of meaningful options to remedy the denial of speedy post-trial processing provides reviewing authorities and courts with the flexibility necessary to appropriately address these situations on a case-by-case basis.

Certainly, it is a much more cumbersome and time-consuming process to try a case, transcribe a record, have counsel,[4] the military judge, the staff judge advocate, and the convening authority review the records of trial, have the convening authority take action on the case, and then, make the requisite number of copies of the record and exhibits to forward to the Courts of Criminal Appeals than it is for an appellate court to review a completed record and consider and decide the issues raised. Yet, the majority has set out an arbitrary timeline for the post-trial processing of a case in the field without regard to the complications and complexity of the case and the realities of today's mobile, deployed forces.

---

[4] Pursuant to R.C.M. 1105(c)(1), an accused has ten days upon service of the authenticated record of trial or the staff judge advocate's recommendation to submit matters for consideration. This time period may be extended for an additional twenty-day period. If the staff judge advocate's addendum contains new matter, then the accused is entitled to another ten days to respond. The process of post-trial submissions by the defense generally will consume at least thirty to forty days of the 120-day time limit set by the majority.

The majority, who does not suffer the same complications and complexities of those in the field, and who receives the benefit of receiving a completed, typed record to review, has provided that those individuals in the field should have essentially five months to get a completed record to the service courts for docketing. Then, the majority provides the Courts of Criminal Appeals with eighteen months from docketing to completion of review. This Court has not always followed its own standard of completing review within eighteen months. I suggest that if we are going to set up rules, the rules might apply to ourselves as well.

The Court's master docket reveals that as of February 7, 2006, there were three cases over 1,000 days old, which is more than the eighteen-month standard set out by the majority for the Courts of Criminal Appeals to issue opinions. There were also more than thirty cases in which the petition had been granted and no action had been taken for over 400 days. Additionally, there were more than twenty-four cases where petitions had been pending for over eighteen months in which no action had been taken on the petition.

My purpose in mentioning these delays is not to be critical of this Court, but rather to underscore that there are valid reasons for the length of time it takes to conduct a thorough appellate review of a case whether it be before this Court or a

Court of Criminal Appeals.[5]  Many cases are very complex and case
load commitments of counsel are often legitimate reasons to seek
enlargements of time in order to represent one's client
adequately and ethically.  Let me be very clear that I do not
condone many of the delays we have encountered in the military
justice system, including the delay in this case.  I share the
concerns of the majority and urge the appropriate legislative
and executive branch officials to take all necessary steps to
address resource and other issues that impact on the efficient
and timely processing of cases for appellate review.  I do not,
however, believe justice is served by overstepping our judicial
role and establishing timeline rules, albeit cloaked in the
guise of presumptions, for the post-trial processing of cases.

The majority acknowledges in its opinion that timelines in
the past have not worked, but yet they plug ahead establishing
such rules.[6]  We are not a rulemaking body and, if we were, we
should not adopt a bright-line rule unless it would approximate

---

[5] Each case must be evaluated for "unreasonable" post-trial delay
based on the facts and circumstances of the case and not some
arbitrary timeline imposed by an appellate court.
[6] See United States v. Burton, 21 C.M.A. 112, 118, 44 C.M.R. 166,
172 (1971) (establishing a three-month rule for a pretrial
delay), modified by United States v. Driver, 23 C.M.A. 243, 246,
49 C.M.R. 376, 379 (1974)(explicitly changing the rule from
"three months" to "ninety days"); Dunlap v. Convening Authority,
23 C.M.A. 135, 138, 48 C.M.R. 751, 754 (1974) (establishing a
ninety-day rule for a post-trial delay).  But see United States
v. Kossman, 38 M.J. 258, 261 (C.M.A. 1993) (overruling Burton
and Driver); United States v. Banks, 7 M.J. 92, 93-94 (C.M.A.
1979) (overruling Dunlap).

a correct result.  These rules will not solve the problem and will cause considerable anxiety among those who have to do the yeoman's work of getting the record to the appellate courts.  I also believe that, in the haste to meet these arbitrary timelines, we will see more errors or mistakes in the post-trial processing and in the appellate review of cases, poorly constructed records of trials, and even the trampling of the rights of the accused.  We have already seen situations where appellate defense counsel, in an attempt to move cases along, file pleadings before giving their clients a reasonable opportunity to raise issues with them and the appellate courts.

In evaluating what remedy it should grant in regard to the lengthy post-trial delay in this case, the majority looks at potential remedies without considering the seriousness or the nature of the offenses involved.  I respectfully dissent from the majority's conclusion of a violation of Appellant's right to a speedy post-trial review absent a showing of actual prejudice to the findings or sentence by Appellant.  It is not enough for an appellant to claim anxiety as to the outcome of the appeal. See People v. Missouri, 299 N.W.2d 346, 352-53 (Mich. Ct. App. 1980).  Even in the pretrial scenario, it has been held that a ten-year delay does not create a presumption of prejudice.  See,

24

United States v. Moreno, No. 04-0698/MC

e.g., United States v. Mohawk, 20 F.3d 1480, 1488 (9th Cir. 1994). There must be a showing of actual prejudice.[7]

IV. Conclusion

This Court is not a rulemaking body. Attempts at rulemaking in the past have proven to be unworkable, and we should not venture into that area again. The Court should leave the rulemaking function where it belongs -- to the executive and legislative branches. If the facts of this case establish a violation of the Appellant's right to a speedy post-trial review upon applying the Barker test, then so be it. But, this Court should not create rules that exceed the bounds of the separation of powers doctrine, and that will not accomplish the desired result.

---

[7] See, e.g., Elcock v. Henderson, 28 F.3d 276, 279 (2d Cir. 1994) (absent showing actual prejudice, no violation of due process for eight-year delay between conviction and appeal); Heiser v. Ryan, 15 F.3d 299, 303-04 (3d Cir. 1994) (absent actual prejudice thirteen-year delay was not a violation of due process); United States v. Alston, 412 A.2d 351, 361-62 (D.C. 1980) (must show actual prejudice); State v. Chapple, 660 P.2d 1208 (Ariz. 1983) (en banc) (must show actual prejudice).