# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

### Tom K. HOLBROOK,
### Seaman (E-3), U.S. Coast Guard

### CGCMS 24329

### Docket No. 1251

### 10 January 2007

Special Court-Martial convened by Commander, First Coast Guard District. Tried at New York, New York, on 6 April 2005.

| | |
|---|---|
| Military Judge: | CDR Steven J. Andersen, USCG |
| Trial Counsel: | LCDR Luke M. Reid, USCG |
| Civilian Defense Counsel: | Lars C. Johnson, Esquire |
| Detailed Defense Counsel: | LT Julie C. Niemeier, JAGC, USNR |
| Appellate Defense Counsel: | LT Lynn R. S. Capuano, USCG |
| Assistant Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT D. Sean Baer, USCGR |

## BEFORE
## PANEL TEN
## BAUM, McCLELLAND, & FELICETTI
### Appellate Military Judges

FELICETTI, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of the following offenses: one specification of fraudulent enlistment, in violation of Article 83, Uniform Code of Military Justice (UCMJ); two specifications of false official statement with the intent to deceive, in violation of Article 107, UCMJ; one specification of damage to military property of the United States, in violation of Article 108, UCMJ; one specification of reckless driving, in violation of Article 111, UCMJ; one specification of wrongful use of marijuana, one specification of wrongful use of cocaine, one specification of wrongful introduction of marijuana, one specification of wrongful introduction of cocaine, two specifications of wrongful

distribution of cocaine, and one specification of wrongful distribution of marijuana, all in violation of Article 112a, UCMJ; and one specification of leaving the scene of an accident and one specification of communicating a threat, both in violation of Article 134, UCMJ. The military judge sentenced Appellant to a bad-conduct discharge, reduction to E-1, and confinement for eleven months, which he credited with fifty-seven days of pretrial confinement pursuant to *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984). The Convening Authority approved the sentence as adjudged and suspended confinement in excess of ten months until six months after Appellant's release from confinement, pursuant to the terms of the pretrial agreement. In addition, the Convening Authority waived automatic forfeitures imposed pursuant to Article 58b, UCMJ, until 31 December 2005, with pay and allowances to be paid to Appellant's spouse.

Before this Court, Appellant has assigned four errors:

I.      THAT APPELLANT'S PLEA TO FRAUDULENT ENLISTMENT (CHARGE I) WAS IMPROVIDENT BECAUSE THE MILITARY JUDGE FAILED TO ELICIT FACTS SUFFICIENT TO ESTABLISH THAT APPELLANT KNEW HE LIED ABOUT A MATERIAL FACT RELEVANT TO HIS QUALIFICATION FOR ENLISTMENT.

II.     THAT APPELLANT'S PLEA TO RECKLESS OPERATION OF A VEHICLE (CHARGE IV) WAS IMPROVIDENT BECAUSE THE MILITARY JUDGE FAILED TO ELICIT FACTS SUFFICIENT TO ESTABLISH THAT APPELLANT OPERATED A VEHICLE RECKLESSLY.

III.    THAT APPELLANT'S PLEA TO FLEEING THE SCENE OF AN ACCIDENT (CHARGE VI) WAS IMPROVIDENT BECAUSE THE MILITARY JUDGE FAILED TO ELICIT FACTS SUFFICIENT TO ESTABLISH THAT THERE WAS AN ACCIDENT.

IV.     THAT THIS COURT SHOULD CONSIDER THE UNREASONABLE AND UNEXPLAINED POST-TRIAL DELAY IN DETERMINING THE SENTENCE THAT SHOULD BE APPROVED.

Assignment II is rejected. We find sufficient admissions in the providence inquiry to support Appellant's plea that his driving was reckless. Assignments I, III, and IV will be discussed.

## Facts

Appellant met with a Coast Guard recruiter on 5 December 2003 to execute various enlistment documents. One of the documents, DD Form 1966/2, asked a series of "yes" or "no" questions on various topics including the applicant's past drug use and abuse. Appellant checked the "yes" block in reply to a detailed question about prior drug use. This required him to explain his answer in the form's remarks section. Appellant wrote in the appropriate section that he had "experimented with marijuana, but no other drugs." (Prosecution Ex. 1, 2.) He also certified in another part of the form that "the information given by me in this document is true, complete, and correct to the best of my knowledge. I understand that I am being accepted for enlistment based on the information provided by me in this document . . . ." (Prosecution Ex. 2.)

Appellant's answer to the question about drug use was not true. He significantly understated his marijuana use and concealed his prior methamphetamine addiction and two-month treatment in a drug rehabilitation program.

Appellant was subsequently enlisted in the Coast Guard on or about 26 January 2004. On 29 June 2004, he was driving a government-owned Chevy Blazer. He had consumed eight beers during the previous four to five hours but maintained that he was not intoxicated at the time. While waiting at a traffic light, Appellant's foot slipped off the brake pedal, and the government SUV "bumped" the van in front of it at about one mile per hour. (R. at 68.) Appellant reversed the SUV, and both he and his passenger looked for any damage to the van. None was visible. When the light turned green, both vehicles moved through the intersection. The van, however, pulled over to the side of the road. Appellant panicked and accelerated away from the parked van at around forty miles per hour through a residential area. Some time later he lost control in a turn, collided with a house, and totaled the government's Chevy Blazer.

## Assignment I

Appellant asserts that his plea to Charge I, fraudulent enlistment, was improvident because, at the time he knowingly made false statements to the recruiter, Appellant was not certain that truthful answers would prevent him from enlisting. We disagree since Appellant

clearly knew that the recruiter would consider this false information concerning Appellant's qualifications for enlistment.

Fraudulent enlistment is committed when a person "procures his own enlistment or appointment in the armed forces by knowingly false representation or deliberate concealment as to his qualifications for the enlistment or appointment . . . ." Article 83(1), UCMJ. A person cannot, obviously, procure his own enlistment in the armed forces unless the false or concealed information has some bearing on one's qualifications or fitness to join. A completed offense, therefore, requires that "the enlistment would not have been procured except for and by reason of the false representation or deliberate concealment." *United States v. Loyd*, 7 C.M.R. 453, 454 (N.B.R. 1953); *see United States v. Danley*, 21 USCMA 486, 487, 45 C.M.R. 260, 261 (C.M.A. 1972). The elements listed in the Manual for Courts-Martial repeat this statutory language and add that the information misrepresented or concealed must be "material." Manual for Courts-Martial, Pt. IV, ¶ 7.b(1) (MCM), United States (2005 ed.). The explanation section states that a material matter includes any information used by the recruiting officer in reaching a decision as to the enlistment and any information that normally would have been so considered if it had been provided. MCM, Pt. IV, ¶ 7.c(1). The additional focus on materiality essentially restates the statutory requirement that the enlistment be procured by the false representation or deliberate concealment. Article 83(1), UCMJ.

There is no dispute in this case that the false information Appellant knowingly provided about his prior illegal drug use was material and that an honest answer would have precluded his enlistment. Although he had some initial difficulty, Appellant admitted this during the providence inquiry. The question on appeal is the level of knowledge regarding materiality required of Appellant at the time of his knowing misrepresentation and concealment.

Appellant asserts that actual knowledge of materiality at the time of the offense is required. He would also significantly expand the MCM definition of materiality. This argument is based on the statute which criminalizes "knowingly false representation or deliberate concealment as to his qualifications for the enlistment." Article 83(1), UCMJ. According to Appellant, this language imposes a stringent knowledge requirement. General knowledge that

the false representation or deliberate concealment goes to enlistment qualifications considered by the recruiter is not sufficient. Instead, according to Appellant, he must have known that it was a material matter, as the term is explained in the MCM, *and* that a truthful answer would have precluded his enlistment.

We reject Appellant's expanded definition of materiality. Neither the plain language of the statute nor the longstanding case law in this area requires contemporaneous knowledge that a false representation or deliberate concealment will be determinative. The falsehood or concealment must be knowingly made. Article 83(1), UCMJ. It must, in fact, result in the procurement of the enlistment. *Loyd*, 7 C.M.R. at 454; *Danley*, 21 USCMA at 487, 45 C.M.R. at 261; MCM, Pt. IV, ¶ 7.1(b). An accused is not, however, required to understand the full impact of a complete or truthful answer at the time of the false statement or concealment. This would, essentially, require complete knowledge of the service's enlistment standards and policies before entry into active duty. There is no such requirement.

Our review of the record, moreover, indicates Appellant contemporaneously knew that his answer about illegal drug use was material, as the term is explained in the MCM. He knew the recruiter would consider it. He also knew it affected his qualifications and fitness for enlistment and so certified on the DD Form 1966/2. Appellant may not have known the full impact of a truthful answer, but he clearly knew he was lying about his enlistment qualifications to a recruiting officer. Thus, Appellant knew his false answer was material, and Assignment of Error I is rejected. We do not address the hypothetical question of whether a lack of contemporaneous knowledge of materiality would be fatal to the charge since Appellant clearly knew that his answer was material.

## Assignment III

Appellant asserts that his plea to Charge VI, fleeing the scene of an accident, was improvident because there was no evidence that the low-speed "bumping" of the van resulted in an injury to any person or property. MCM, Pt. IV, ¶ 82. We agree.

To commit the offense of fleeing the scene of an accident under Article 134, UCMJ, the accused must be driving a vehicle that is involved in an accident. MCM, Pt. IV, ¶ 82.b(1)(b). The MCM defines an accident for purposes of this offense as a situation "where there is damage to property other than the driver's vehicle or injury to someone other than the driver or a passenger in the driver's vehicle." MCM, Pt. IV, ¶ 82.c. There is no "accident" from which to flee absent such damage. *United States v. Littleton*, 60 M.J. 753, 753-55 (N.M.Ct.Crim.App. 2004).

In this case, there is nothing in the record about any injury or property damage from the incident with the van. Appellant stated twice during the providence inquiry that there was no visible damage. (R. at 68, 70.) According to the record, therefore, no accident occurred with the van, at least as the MCM explains the term for purposes of this offense.

It is true that Appellant repeatedly described the event as an accident and that he fled the scene in a way that eventually caused significant property damage to others. This charge, however, is limited to the "bumping" incident with the van which caused no damage or injury. Appellant's testimony, therefore, clearly contradicts his guilty plea.

Accordingly, the findings of guilty to Charge VI are set aside. We will reassess the sentence as requested.

## Assignment IV

Appellant asserts unreasonable and unexplained post-trial delay which should be considered by this Court in determining what sentence it approves in accordance with Article 66, UCMJ. While not asserting a due process violation, he also argues that our higher court's recent decision on due process violations caused by excessive post-trial delay should inform our evaluation of this issue under a purely Article 66 analysis. *See United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006).

An accused has a right to a timely review of his court-martial findings and sentence independent of any request for diligent post-trial processing. *E.g.*, *United States v. Walters,* 61

M.J. 637, 638-39 (C.G.Ct.Crim.App. 2005). Upon finding unreasonable and unexplained post-trial delay, this Court may consider such delay, along with all the other facts and circumstances reflected in the record, in exercising its responsibilities under Article 66(c), UCMJ. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). We may craft an appropriate remedy, when warranted, whether or not the delay has materially prejudiced the appellant's substantial rights. *Id.* at 224-25.

By its very nature, this approach does not lend itself to bright-line rules and strict timetables. To the extent we have set any standard, it is that institutional diligence is required in post-trial processing. Honest mistakes, administrative problems, and chronic understaffing that significantly delay post-trial processing beyond the guidelines in the Coast Guard Military Justice Manual, and other guideposts, often do not reflect the required diligence. *See United States v. Gonzalez*, 61 M.J. 633, 636-37 (C.G.Ct.Crim.App. 2005); *United States v. Walters*, 61 M.J. 637, 638-39 (C.G.Ct.Crim.App. 2005); *United States v. Denaro*, 62 M.J. 663, 667 (C.G.Ct.Crim.App. 2006). On the other hand, institutional diligence may be shown when a new staff judge advocate (SJA) and convening authority take significant time to familiarize themselves with a case so that they may properly exercise their post-trial duties. *United States v. Bridges*, 61 M.J. 645, 647 (C.G.Ct.Crim.App. 2005). In the end, it is the unique facts and circumstances of each case that matter.

While not applicable to this case, our higher court has established clear rules for future post-trial processing. The new timeline permits 120 days from trial to the convening authority's action, thirty additional days for docketing at the service Court of Criminal Appeals, and eighteen additional months for a decision by this Court. *Moreno*, 63 M.J. at 142. Failure to meet these standards triggers a four-part analysis of the appellant's due process right to speedy appellate review. *Id.*

These prospective standards for triggering an automatic evaluation of due process rights, while also addressing post-trial delay, are separate from the broader sentence appropriateness review under Article 66(c), UCMJ. Excessive post-trial delay that does not constitute a due process violation may still merit relief under Article 66, UCMJ. *Tardif*, 57 M.J. at 224.

Moreover, our higher court has never asserted authority to dictate the circumstances when the service courts *must* grant relief under their unique and discretionary Article 66(c) power. Finally, the *Moreno* standards serve only to trigger the four-part due process analysis; they do not resolve the issue. *Moreno*, 63 M.J. at 142. Rigidly superimposing them on our normal Article 66 review of post-trial delay would, in many cases such as this one, require a detailed due process analysis in instances where the appellant has explicitly denied a due process violation. We will, therefore, continue to vigilantly apply the current standards for resolving purely Article 66 post-trial delay claims.

In this case, the Convening Authority acted 162 days after the sentence was adjudged. An additional forty-six days passed before the case was forwarded to the Judge Advocate General who transmitted the case to this Court nine days later. Some portion of the delay is adequately explained by the temporary absence of the SJA, the disqualification of the Assistant SJA, and the detail of a large portion of the District legal staff to Hurricane Katrina relief efforts. However, even before Hurricane Katrina, it took 119 days for the Government to produce a fairly short authenticated record of trial. We find the overall delay unreasonable and will, therefore, consider it when exercising our sentence appropriateness review under Article 66, UCMJ.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. In light of the foregoing discussion with regard to Assignment of Error III, the findings of guilty to Charge VI, fleeing the scene of an accident, and its specification are set aside. The remaining findings of guilty are deemed to be correct in law and fact and are affirmed.

We now reassess the sentence in light of the reduced guilty findings. In so doing, we may affirm only so much of the sentence as we believe the military judge would have adjudged in the absence of the error we are now correcting; if we are unable to determine what that would have been, we must order a rehearing on sentence. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

We find the changed findings do not impact the sentence. However, in light of our decision with respect to unreasonable post-trial delay, Assignment of Error IV, we have determined that only so much of the sentence as provides for a bad conduct discharge, confinement for eleven months (partially suspended by the Convening Authority), and reduction to E-2 should be approved. Accordingly, the sentence of a bad-conduct discharge, confinement for eleven months, and reduction to E-2 is affirmed.

Chief Judge BAUM and Judge McCLELLAND concur.



For the Court,

Jane R. Lim
Clerk of the Court