UNITED STATES, Appellee

v

MEARLON J. GOINS, Private, U. S. Marine Corps Reserve, Appellant

15 USCMA 175, 35 CMR 147

No. 17,905

December 11, 1964

*Lieutenant Craig F. Swoboda,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Charles B. Sevier,* USMC.

*Lieutenant Colonel J. M. Detrio,* USMC, argued the cause for Appellee, United States. With him on the brief was *Lieutenant H. D. Campbell,* USNR.

## Opinion of the Court

KILDAY, Judge:

Accused was tried by a special court-martial convened at Camp Sukiran, Okinawa, on charges of failing to go to his place of duty, being disrespectful in language toward his superior warrant officer and toward his superior noncommissioned officer, and being drunk and disorderly in quarters, in violation of Articles 86, 91, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 891, and 934. He pleaded not guilty to the Article 86 and 91 offenses, but guilty of the drunk and disorderly count. The court-martial acquitted accused as to failure to repair, but otherwise found him guilty as charged, and sentenced him to a bad-conduct discharge, confinement at hard labor for six months, and partial forfeitures for the same period.

The findings and sentence having been approved by authorities at intermediate levels of review, accused petitioned this Court under the provisions of Article 67(b)(3), Uniform Code of Military Justice, 10 USC § 867. We elected to hear his appeal on a single issue concerning the instructions given by the president of the court-martial on the specifications of disrespect.

While a statement of the facts is not essential to determination of this particular instructional issue, the following brief recitation will assist in placing the question in perspective. Accused's misconduct arose out of an episode in which he imbibed intoxicants during duty hours. His first sergeant and his company commander—the noncommissioned officer and the warrant officer involved in the specifications to which the granted issue pertains—observed him in the company area. It was obvious he had been drinking. The first sergeant had accused report to him in the company office, whereupon accused addressed him in patently offensive and vulgar terms, asking whether the sergeant was placing him on report. Apparently not wishing to pursue the matter further at that time in light of the circumstances, the sergeant directed accused to go to his quarters and "sleep it off." Accused, however, remained bellicose, and in leaving the office bumped into his commanding officer, whereupon he looked directly at the warrant officer and addressed him in similar vulgar and offensive language. At that juncture, the warrant officer told the first sergeant to bring accused back, so the sergeant went after him. When he told accused that the warrant officer wanted to see him, accused responded again with vulgarity. Accused addressed his superior in the vernacular as "Top," a reference by rank to his position as first sergeant, and stated he didn't want to see the warrant officer.

Accused was acquitted of the specification laid under Article 86 and, as previously noted, he pleaded guilty to being drunk and disorderly. Essentially, the defense position at trial as to the disrespect counts was that accused was so intoxicated at the time as to be unable to recognize even his friends, much less his superiors.

At this level, appellate defense counsel press essentially the same point. The principal thrust of their position is that the president's instructions did not require the court-martial to find that the warrant officer and first sergeant were accused's superiors, and that accused knew this. The defense also asserts that the advice failed to require a finding that the language was disrespectful, and complains that there was no definition of the element requiring that the superiors be in the execution of their office. Accordingly, it is contended, the instructions do not properly cover all elements of the offenses, and reversal is required. United States v Clay, 1 USCMA 74, 1 CMR 74; United States v Cromartie, 1 USCMA 551, 4 CMR 143.

We reject these contentions. Short shrift may be given the latter two complaints, for the president did require a finding that the accused's superiors were in the execution of their office and, from the facts, there could be no question they were. Indeed, that matter was not contested.

So, too, the claim that the instructions did not require a finding that the language was, under the circumstances, disrespectful to accused's superiors must fail. In this connection the president charged the court members that, in order to convict, they must be convinced beyond reasonable doubt "the accused did use language under certain circumstances, or in a manner, or intended meaning as alleged." Again, there was no contest over the vulgar and insulting language shown by the proof. The same is obviously disrespectful *per se,* and was alleged *in haec verba* in the specifications. Thus, we find no instructional infirmity in this regard.

We turn our attention, therefore, to the main argument pressed by appellate defense counsel. It is asserted that in his advice to the court-martial on the elements of these offenses, the president did not instruct on knowledge by ac-

cused that the sergeant and warrant officer were accused's superiors. The defense position, however, ignores the scope of the instructions in their entirety. Contrary to appellate defense counsel's contention, as the Government points out, the president did in his advice carefully cover the theory followed by the defense at trial. The proof showed accused addressed his first sergeant by rank and one of his friends by name, and otherwise tended to show he recognized his superiors. The president's instructions required a finding that the disrespectful language was used by accused toward, or within the sight and hearing of, his superiors. Further, and with specific regard to the evidence tending to show accused was intoxicated at the time of the alleged offenses, the president instructed both on the disrespect counts and the Article 86 specification as to which accused was acquitted. He admonished the court as follows:

"Instructions on drunkenness in regards to charges against the accused under Article 86 and 91.

"With reference to the evidence tending to show that the accused was intoxicated at the time of the alleged offenses of violation of Article 86 and 91, you are advised that you may consider evidence of voluntary drunkenness in determining whether the accused had sufficient mental capacity to understand the order involved in the offenses of failing to go to his appointed place of duty. On the charges of disrespectful language to his superior Warrant Officer and a superior Non-commissioned Officer, did the accused have the mental capacity to know that the alleged victims were his superior Warrant Officer and superior Non-commissioned Officer. The fact that a person was intoxicated at the time he committed an offense does not necessarliy [sic] show he was deprived of his reasoning ability, for a person may be drunk and at the same time be aware of his acts and their nature and probable consequences. The question raised by the evidence of voluntary drunkenness and presented for your determination is whether the accused was intoxicated to such a degree as to render him incapable of understanding an order to go to his appointed place of duty or to prevent him from knowing that the alleged victims were his Superior Warrant Officer and Non-commissioned Officer.

. . . . . .

"In light of all the evidence, if you have a reasonable doubt that the accused was mentally incapable of understanding an order to go to his place of duty or that the alleged victims of disrespectful language were his superior Warrant Officer and Non-commissioned Officer, you must find him not guilty of these offenses."

From the outset, this Court has deemed it unnecessary to decide whether knowledge or lack of the same, in situations of the sort presently before us, is an element of the offense or a defense. Whichever it may be, we have required that proper instructions be given on the issue so that the court-martial can consider the matter in arriving at a finding. See United States v Simmons, 1 USCMA 691, 5 CMR 119; United States v Wallace, 2 USCMA 595, 10 CMR 93. See also United States v Arnovits, 3 USCMA 538, 13 CMR 94.

Manifestly, the president's instructions required the court members to consider accused's knowledge and capacity to understand he was using disrespectful language to his superiors—his first sergeant and the warrant officer who was his commander. The question of accused's knowledge in this record had its roots in the testimony regarding intoxication. The president's advice was appropriately tailored to the factual issue the court-martial was required to resolve, and we find no error in the president's charge.

For the foregoing reasons, the assignment of error must be resolved adversely to accused. The decision of the board of review is, therefore, affirmed.

Chief Judge QUINN and Judge FERGUSON concur.