# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class KYLE M. GOVINDASAMY**
**United States Army, Appellant**

ARMY 20121038

Headquarters, III Corps and Fort Hood
Gregory B. Batdorff, Military Judge
Colonel Stuart W. Risch, Staff Judge Advocate (pretrial)
Colonel Ian C. Corey, Staff Judge Advocate (recommendation)
Lieutenant Colonel Travis L. Rogers, Acting Staff Judge Advocate (addendum)

For Appellant: Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Payum Doroodian, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major John K. Choike, JA; Captain John Gardella, JA (on brief).

16 December 2015

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of disobeying a superior commissioned officer, two specifications of violating a general order, one specification of wrongful use of marijuana, one specification of wrongful possession of marijuana, and one specification of assault consummated by battery, in violation of Articles 90, 92, 112a, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 892, 912a, and 928 (2006 & Supp. IV 2010) [hereinafter UCMJ].

Subsequent to appellant's guilty pleas, an officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of disrespect toward a superior commissioned officer, two specifications of wrongful

sexual contact, one specification of assault consummated by a battery, one specification of possession of Spice[1] with intent to distribute in violation of Articles 89, 120, 128, and 134, UCMJ.[2] The panel sentenced appellant to two years confinement and a dishonorable discharge. The military judge granted appellant 50 days pretrial confinement credit. The convening authority approved the sentence as adjudged and credited appellant with 50 days confinement credit. This case is before us for review pursuant to Article 66, UCMJ. Appellant raises three assignments of error, one of which requires discussion and relief. We also find that one matter raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) warrants discussion and relief.

## BACKGROUND

*Disrespect of a Superior Officer*

While stationed at Fort Hood, appellant was counseled for misconduct by his commander. The counseling took place inside the commander's office. Appellant received a copy of the written counseling statement from his commander before being dismissed. After leaving the commander's office, appellant headed down the hallway towards the door to exit the orderly room. Outside the presence of his commander, appellant ripped up the copy of the counseling statement he had just received from his commander. Appellant's actions were not accompanied by words or other gestures. Appellant's platoon sergeant was standing nearby and witnessed appellant tearing up the counseling statement.

Appellant was found guilty of a violation of Article 89, UCMJ. The specification alleged:

> In that [appellant], U.S. Army, did at Fort Hood, Texas, between on or about 23 September 2012 and 27 September 2012, behave with disrespect toward CPT [MS], his superior commissioned officer, then known to him [by appellant] to be his superior commissioned officer, by ripping up a counseling statement in the presence of SFC WL, shortly after it was given to him by CPT [S]

[1] Spice is a designer drug sprayed onto a herbal material that mimics the effects of cannabis. Synthetic cannabis is often termed "Spice."

[2] The panel acquitted appellant of one specification of attempted rape, two specifications of aggravated sexual contact, one specification of indecent exposure, and one specification of assault with intent to commit rape in violation of Articles 80, 120, and 134, UCMJ.

reiterating the restrictions on him after being off-post in violation of those restrictions.

*Dilatory Post-trial Processing*

Appellant's sentence was adjudged on 16 November 2012. The convening authority did not take action until nearly 682 days later, on 29 September 2014. Twenty-one days are attributable to the defense. The total processing time from conviction to action, minus defense delay, was 661 days.

## LAW AND DISCUSSION

*Disrespect of a Superior Officer*

Article 66(c), UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). Under Article 66(c), we may affirm only those findings of guilty that we find correct in law and fact and determine, based on the entire record, should be affirmed. The test for legal sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the government, a fact-finder could rationally have found all the essential elements of an offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

The elements of disrespect toward a superior commissioned officer, Article 89, UCMJ, are as follows:

> (1) That the accused did or omitted certain acts or used certain language to or concerning a certain commissioned officer;
>
> (2) That such behavior or language was directed toward that officer;
>
> (3) That the officer toward whom the acts, omissions, or words were directed was the superior commissioned officer of the accused;

(4) That the accused then knew that the commissioned officer toward whom the acts, omissions, or words were directed was the accused's superior commissioned officer; and

(5) That, under the circumstances, the behavior or language was disrespectful to that commissioned officer.

*Manual for Courts-Martial, United States* (2012 ed.), pt. IV, ¶13.b.

The Court of Appeals for the Armed Forces (CAAF) has generally held all circumstances of a case can be considered in determining whether disrespectful behavior in violation of Article 89, UCMJ, has occurred. *See United States v. Goins*, 15 U.S.C.M.A. 175, 177, 35 C.M.R. 147, 149 (1964). In *United States v. Whitaker*, 5 C.M.R. 539 (A.F.B.R. 1952), for example, the court held that language is not actionable, even where it is clearly offensive, if it is addressed to the world at large, rather than to the person alleged. In *Whitaker*, the accused was charged with saying "to hell with it," signaling his refusal to complete the paperwork necessary to begin a move to a new duty station. The Board stated they were not convinced the words showed "the accused was disrespectful toward [the named individual]." *Id.* at 556. Our court recently held similarly in a case where an accused reacted to a command from his platoon leader by throwing his Kevlar helmet into the Tigris river. *United States v. Collier,* No. 20120554, 2014 CCA LEXIS 207, *7 (Army Ct. Crim. App. Mar. 31, 2014)(mem. op.). The court held that the evidence did not establish the act was "directed at" the platoon leader. *Id.*

In this case, the government asserts appellant's act of tearing up his counseling statement in the presence of SFC WL shortly after it was given to him constitutes disrespect. The evidence offered at trial to support the charge of disrespect was the testimony of SFC WL, the soldier who witnessed appellant's behavior. SFC WL indicated that while he could not attest affirmatively as to whether the commander did or did not see appellant tear up the paper, the building layout was such that the commander would not have seen appellant if the commander was inside his office. SFC WL was not asked, nor did he offer why he believed appellant's ripping of the counseling statement was *directed at the commander*. SFC WL did not testify appellant's act of tearing the paper was accompanied by words or other gestures which might have indicated appellant's actions were directed towards his commander. The company commander offered no testimony regarding appellant ripping the counseling statement.

We find the act of ripping the counseling statement in and of itself, not accompanied by other extant circumstances indicating the action was directed at his commander, does not constitute disrespect. Appellant was under no obligation to

retain the counseling statement. Appellant may have shredded the counseling statement for any number of reasons. We find no evidence in the record indicating the commander was the victim or target of appellant's action. We, therefore, find the evidence factually insufficient to establish beyond a reasonable doubt that appellant was disrespectful toward a superior commissioned officer in violation of Article 89, UCMJ.

*Dilatory Post-trial Processing*

Appellant requests relief for dilatory post-trial processing, where the convening authority took action 682 days after the court-martial concluded. Of that period, 21 days are attributable to defense delay. Appellant requests relief pursuant to this court's statutory authority. *See* UCMJ art. 66(c); *United States v. Collazo*, 53 M.J. 721 (Army Ct. Crim. App. 2000) (recognizing the statutory authority of Courts of Criminal Appeals to grant relief for dilatory post-trial processing).

Given appellant's successful challenge regarding the charge of disrespect to a superior commissioned officer, we must determine if the post-trial delay violated appellant's due process rights to timely post-trial processing. *See United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004) ("An appeal that needlessly takes ten years to adjudicate is undoubtedly of little use to a defendant who has been wrongly incarcerated on a ten-year sentence.") (quoting *United States v. Smith*, 94 F.3d 204, 207 (6th Cir. 1996)). While appellant does not ground his post-trial processing claim as a due process violation, we are nonetheless compelled to determine whether appellant has suffered a due process violation.

Our superior court established a "presumption of unreasonable delay that will serve to trigger the full [*Barker v. Wingo*, 407 U.S. 514 (1972)] analysis where the action of the convening authority is not taken within 120 days of the completion of trial." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Our superior court counseled this court to exercise "institutional vigilance" in this area of law. 63 M.J. at 143. It is also our statutory authority under Article 66(c) to review the "entire record." *See United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002) ("Our Court has consistently recognized the broad power of the Courts of Criminal Appeals to protect an accused.") (citation omitted).

In determining whether post-trial delay results in a due process violation, we apply the four-factor test announced in *Barker,* 407 U.S. at 530. *See also Moreno*, 63 M.J. at 135. These factors include (1) length of the delay, (2) reasons for the delay, (3) assertion of the right to a timely review and appeal, and (4) prejudice. *Moreno,* 63 M.J. at 135. "Once this due process analysis is triggered by a facially unreasonable delay, the four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Moreno*, *Id.* at 136. These factors ultimately weigh in favor of appellant.

First, the 661 day delay is facially unreasonable under any standard. *See Id.* at 142 (establishing a presumption of unreasonable delay when the convening authority takes action more than 120 days after the trial ends); *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 39 (C.A.A.F. 2003) ("The nature of this [court's] review calls for, if anything, even greater diligence and timeliness than is found in the civilian system."). This 1168-page record, while lengthy, was not particularly complicated or remarkable. This factor weighs in favor of appellant.

Second, the government's explanations for the delay involve court reporter shortages, a high workload, and a deployment of the III Corps headquarters. Our superior court has held "that personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011) ("To allow caseloads to become a factor in determining whether appellate delay is excessive would allow administrative factors to trump the Article 66 and due process rights of appellants.") (citing *Moreno*, 63 M.J. at 137) (additional citations and quotations omitted). The reasons for delay weigh in favor of appellant.

Third, appellant asserted his right to speedy post-trial processing 158 days after completion of the trial, before transcription was complete and before the military judge authenticated the record of trial. This factor weighs in favor of appellant. *See Barker*, 407 U.S. at 531 ("The more serious the deprivation, the more likely a defendant is to complain.").

Fourth, we apply three factors when analyzing prejudice in the context of a due process violation for post-trial delay:

> (1) prevention of oppressive incarceration pending appeal;
>
> (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and
>
> (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

*Moreno*, 63 M.J. 138-39 (citing *Rheuark v. Shaw*, 629 F.2d 297, 303 n.8 (5th Cir. 1980)) (additional citations omitted).

The first sub-factor is "directly related to the success or failure" of appellant's substantive appeal. *Id.* at 139. "If the substantive grounds for the appeal are not meritorious, an appellant is in no worse position due to the delay, even though it may have been excessive." *Id.* (citing *Cody v. Henderson*, 936 F.2d 715,

720 (2d Cir. 1991)). Appellant's remedy for the disrespect charge is for this court to set aside appellant's conviction for that charge and specification and to reassess appellant's sentence. "[I]f an appeal is not frivolous, a person convicted of a crime may be receiving punishment the effects of which can never be completely reversed or living under the opprobrium of guilt when he or she has not been properly proven guilty and may indeed be innocent under the law." *Id.* (quoting *Rheuark*, 628 F.2d at 304). This sub-factor weighs in favor of appellant.

The second sub-factor requires an appellant show "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140-41. Appellant has not established anxiety, and as such, this factor weighs in favor of the government.

In order to prevail on the third factor, an appellant must be able to specifically identify how he would be prejudiced at rehearing due to delay, if one were authorized. Mere speculation is not enough. *Id.* (citation omitted). Because a rehearing is not authorized, this factor is not relevant and weighs in favor of the government.

In balancing the *Barker* factors, we have an appellant who had a meritorious appeal – but one which does not warrant a rehearing. It does, however, authorize a reassessment of appellant's punishment. As such, we conclude that the post-trial delay was not harmless beyond a reasonable doubt. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006) ("If we conclude that an appellant has been denied the due process right to speedy post-trial review and appeal, 'we grant relief unless this court is convinced beyond a reasonable doubt that the constitutional error is harmless.'") (quoting *Toohey*, 63 M.J. at 363).

We find that the reasons offered by the government are unreasonable under the totality of circumstances and relief is appropriate under the facts of this case.

**CONCLUSION**

The finding of guilty to the Specification of Additional Charge II is set aside and that specification is DISMISSED.

The remaining findings of guilty are AFFIRMED. We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape that might cause us pause in reassessing appellant's sentence. Second, although appellant was sentenced by members, here,

this factor carries less weight because the majority of the remaining offenses "do not address service custom, service-discrediting conduct or conduct unbecoming." *Winckelmann*, 73 M.J. at 16. Third, the nature of the remaining offenses still captures the gravamen of the original offenses and the circumstances surrounding appellant's conduct. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial. We are confident that based on the entire record and appellant's course of conduct, a panel would have imposed a sentence of at least a dishonorable discharge and confinement for 23 months. Given the dilatory post-trial processing and the error noted herein, we affirm only so much of the sentence as extends dishonorable discharge and confinement for 21 months. All rights, privileges, and property, of which appellant has been deprived by virtue of this decision setting aside portions of the findings and sentence are ordered restored.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

JOHN P. TAITT
Deputy Clerk of Court

8