# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, LEVIN,[1] and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class ALEXANDER E. DENSON**
**United States Army, Appellant**

ARMY 20150137

Headquarters, United States Army Alaska
Douglas Watkins, Military Judge (arraignment)
Andrew Glass, Military Judge (trial)
Colonel Erik L. Christiansen, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman JA; Captain Matthew L. Jalandoni, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Cormac M. Smith, JA; Captain Cassandra M. Resposo, JA (on brief).

18 August 2017

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LEVIN, Judge:

Appellant raises four errors, three of which merit discussion and relief. First, appellant asks that we set aside his convictions for sexual assault and abusive sexual contact in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016) and *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017). Here, the factfinder – over defense objection – was permitted to consider appellant's propensity to commit the charged offenses based on the factfinder's assessment of the evidence with respect to three other charged offenses.[2] This was error and warrants relief. Second, appellant

---

[1] Judge LEVIN took final action while on active duty.

[2] The military judge denied the motion with respect to one specification of sexual assault and ultimately acquitted appellant of that particular specification.

alleges, and the government concedes in part, that several of the assault charges amounted to an unreasonable multiplication of charges. We agree with some, but not all, of appellant's averments in that regard. Finally, appellant asks that we provide sentencing relief because it took 303 days for the convening authority to take action on his case. Because we find a due process violation, we agree and grant relief.[3]

This case is before us for review under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (2012) [hereinafter UCMJ]. A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of false official statement, two specifications of sexual assault, two specifications of abusive sexual contact, one specification of aggravated assault, seven specifications of assault consummated by a battery, and two specifications of communicating a threat, in violation of Articles 107, 120, 128, and 134, UCMJ. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for sixty-eight months, forfeiture of all pay and allowances, and reduction to Private E-1. Appellant was credited with three days against the sentence to confinement.

## LAW AND DISCUSSION

### A. *The Admission of Military Rule of Evidence 413 Propensity Evidence*

#### *1. Factual Background for the Article 120, UCMJ, Offenses*

With respect to the allegations involving sexual offenses, appellant's crimes fall into four categories: misconduct relating to AK; misconduct relating to AS; misconduct relating to LR; and misconduct relating to EC. All of the misconduct occurred within a sixteen-month period.

---

[3] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant personally asserts a number of issues. Among those issues, appellant claims that the record of trial is incomplete because his appellate defense counsel were unable to view Prosecution Exhibit 9, a video of appellant's interview with the United States Army Criminal Investigation Command (CID). This statement, in part, served as the basis for appellant's conviction for the Specification of Charge I, making a false official statement. As neither counsel nor appellant submitted an affidavit, there is no evidence before this court that appellate defense counsel were not able to view the exhibit. Furthermore, as part of our own statutory mandate to conduct a de novo review of the factual and legal sufficiency of a conviction, *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003), we have reviewed the record of trial and find this issue to be without merit. To the extent the other issues personally raised by appellant are not mooted by our resolution of other assignments of error, they merit neither discussion nor relief.

On 13 May 2013, appellant and AK met in person after having previously met online. While together in appellant's car, appellant pulled out a knife and poked AK's upper thigh, asking if it hurt. The record is silent as to whether AK responded to appellant's question. The next day, sitting in appellant's car, appellant again pulled out a knife and poked AK, asking if it hurt. AK responded, "Yeah, you already knew that would hurt because you had done it before." That same evening, appellant placed a burning end of his cigarette on the middle of AK's foot. AK pulled away and appellant responded, "I'm abusive, get used to it." Apparently not heeding his warning, AK moved to appellant's lap and the two started kissing. After first kissing AK's breast in a playful way, appellant then bit down hard despite AK's pleas for him to stop. Shortly thereafter, AK advised appellant she no longer wished to see him and, within an hour, reported the incident to the Anchorage Police Department.

On 11 September 2013, appellant and AS met in person after having previously met online. While appellant and AS were watching a movie in AS's apartment, appellant exposed his penis and asked AS to perform oral sex on him. AS complied. Later that night, AS was voluntarily guided onto "all fours" and appellant started to penetrate her anus. AS directed appellant to stop, explaining that it hurt. Although he stopped briefly, appellant began to thrust his penis into AS's anus again. Later, appellant acknowledged to a CID agent that at the time of his statement, he felt like he had sexually assaulted AS. Significantly, appellant told the agent that *at the time of the intercourse*, he "figured it would be okay" and AS had given him permission to perform anal sex on her previously.

In December 2013, appellant was with LR, whom he had previously met online and then married. After initially consenting to anal intercourse, LR told appellant to stop, explaining that "it really hurts." Instead of stopping, appellant applied more pressure on her back, pushed her face down into a pillow, and stated, "No. You'll be fine, take it. It'll get better after a minute or two."

Finally, in August 2014, appellant was with EC, whom he had previously met online and with whom he had engaged in a sexual relationship the year before.[4] While in EC's home, appellant became aggressive with EC, grabbing her breasts, vagina and buttocks without her permission. Although EC struggled with appellant and managed to get away momentarily, appellant grabbed her and held her by the throat against a door. Appellant released EC when EC's roommate awoke and interceded.

Prior to trial, the government gave the defense notice it intended to offer the charged offenses as propensity evidence under Military Rule of Evidence

---

[4] Trial defense counsel argued that these particular websites were "hook-up sites." A reasonable inference, no doubt.

[hereinafter Mil. R. Evid.] 413 and moved the court to make a preliminary ruling on admissibility. The defense opposed the government's motion to admit evidence under Mil. R. Evid. 413. Although the military judge deferred ruling, he ultimately granted the government's motion.

## 2. *Hills and Hukill Applied to this Case*

After appellant's court-martial, our superior court held it is constitutional error for a military judge to give an instruction to a panel that permits Mil. R. Evid. 413 to be applied to evidence of charged sexual misconduct. *Hills*, 75 M.J. at 352. Our superior court reasoned:

> The instructions in this case provided the members with directly contradictory statements about the bearing that one charged offense could have on another, one of which required the members to discard the accused's presumption of innocence, and with two different burdens of proof - preponderance of the evidence and beyond a reasonable doubt. Evaluating the instructions in toto, we cannot say that Appellant's right to a presumption of innocence and to be convicted only by proof beyond a reasonable doubt was not seriously muddled and compromised by the instructions as a whole.

*Id*. at 357. Recently, in *Hukill*, the Court of Appeals for the Armed Forces (C.A.A.F.) explained that the *Hills* reasoning applies to trials by military judge alone. *Hukill*, 76 M.J. at 220. In appellant's court-martial, the military judge allowed the propensity evidence involving charged offenses to be used against each charged offense for which appellant was convicted and, therefore, created constitutional error. *Id*.

If instructional error is found when there are constitutional dimensions at play, this court tests for prejudice under the standard of harmless beyond a reasonable doubt. *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006). The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence. *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005). An error is not harmless beyond a reasonable doubt when there is a reasonable possibility the error complained of might have contributed to the conviction. *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007); *United States v. Chandler*, 74 M.J. 674, 685 (Army Ct. Crim. App. 2015).

Here, not only did the military judge's admission of propensity evidence provide for the lessening of the burden of proof, the government's closing argument

also drew attention to the propensity evidence.  On at least three occasions, trial counsel urged the factfinder to consider the accused's propensity to commit sexual acts of violence against several other victims.

Having reviewed the evidence, given that this is a case of preserved error, we are not convinced beyond a reasonable doubt the propensity instruction did not contribute to the findings of guilty or appellant's sentence.  Thus, the findings for these specifications and charges and the sentence cannot stand.  We grant relief in our decretal paragraph.

### B.  Unreasonable Multiplication of Charges

With respect to this assignment of error, which appellant has couched in terms of unreasonable multiplication of charges, appellant's charges fall into three categories: assault charges involving LR in January 2014; assault charges involving LR in February 2014; and assault charges involving AK in May 2013.  We first address the assault charges involving LR.

### 1.  Specifications 1 and 2 of Charge III and Specifications 3 and 4 of Charge III

Appellant was found guilty, *inter alia*, of the following violations of the UCMJ:

> CHARGE III: Article 128:
>
> SPECIFICATION 1: [In that appellant] [d]id at or near Joint Base Elmendorf-Richardson, Alaska, between about 1 January 2014 and 30 January 2014, commit an assault upon Mrs. L.R. by putting his arm around her neck and applying force likely to produce death or grievous bodily harm, to wit:  strangulation with his arm.
>
> SPECIFICATION 2: [In that appellant] [d]id at or near Joint Base Elmendorf-Richardson, Alaska, between about 1 January 2014 and 30 January 2014, unlawfully strike Mrs. L.R. on the head with his hand.

These specifications stem from appellant's conduct during a single incident in late January 2014.

Appellant was also found guilty, *inter alia*, of the following violations of the UCMJ:

> CHARGE III: Article 128:
>
> SPECIFICATION 3: [In that appellant] [d]id at or near Joint Base Elmendorf-Richardson, Alaska, between about 1 February 2014 and 16 February 2014, unlawfully strike Mrs. L.R. on the face with his knee.
>
> SPECIFICATION 4: [In that appellant] [d]id at or near Joint Base Elmendorf-Richardson, Alaska, between about 1 February 2014 and 16 February 2014, unlawfully pull the hair of Mrs. L.R. with his hands.

These specifications stem from appellant's conduct during a single incident in February 2014.

After the military judge ruled that he would merge Specifications 1 and 2 of Charge III for sentencing purposes, as well as merge Specifications 3 and 4 of Charge III for sentencing purposes, he asked trial defense counsel if there was "[a]nything else?" Counsel responded, "No, Your Honor. Thank you." Defense counsel did not file a motion or otherwise raise the issue of the unreasonable multiplication of charges for findings.

Here, the government has conceded the issue. Therefore, we need not decide whether this is a "unit of prosecution" or unreasonable multiplication of charges issue. We also need not decide whether appellant has preserved the issue for appeal. As the government concedes that the specifications are unreasonably multiplied and we have no reason to reject this concession, we provide appellant relief below.

*2. Unreasonable Multiplication of Charges as Applied to Specifications 1 and 2 of Additional Charge II*

With respect to Specifications 1 and 2 of Additional Charge II, we find no error. Appellant was found guilty, *inter alia*, of the following violations of the UCMJ:

> ADDITIONAL CHARGE II: Article 128:
>
> SPECIFICATION 1: [In that appellant] [d]id at or near Anchorage, Alaska, on or about 16 May 2013, unlawfully burn Ms. A.K.'s foot with a cigarette.

6

> SPECIFICATION 2: [In that appellant] [d]id at or near
> Anchorage, Alaska, on or about 16 May 2013, unlawfully
> poke Ms. A.K.'s leg with a knife.

Here, the *Quiroz* factors on balance weigh in favor of the government. *See United States v.* Quiroz, 55 M.J. 334, 338-39 (C.A.A.F. 2001). First, defense counsel, after findings, made a motion to merge these specifications - only for sentencing purposes - on the grounds that they constituted an unreasonable multiplication of charges. This factor weighs in favor of the government.

Regarding the second *Quiroz* factor, it appears that Specifications 1 and 2 of Additional Charge II were aimed at separate criminal acts. First, appellant used separate objects to assault AK: a knife and then a lit cigarette. Second, there was a break between incidents, rather than a continuous assault. This factor weighs in favor of the government.

Regarding the third factor, findings of guilty against appellant for all of the language in the specifications delineated above do not exaggerate appellant's criminality. This factor weighs in favor of the government.

Regarding the fourth factor, appellant's punitive exposure was not unreasonably increased because the court merged the specifications for sentencing purposes. This factor weighs in favor of the government.

Finally, because the two acts addressed separate acts of criminal conduct, there is no evidence of prosecutorial overreaching or abuse in the drafting of the charges. Thus, the fifth factor weighs in favor of the government.

On balance, we find the *Quiroz* factors with respect to these specifications weigh in favor of the government and, thus, no relief is warranted.

### C. Speedy Post-Trial Processing

Appellant requests relief for dilatory post-trial processing, where the convening authority took action 303 days after the court-martial concluded. Of that period, none was attributable to defense delay. *See United States v. Banks*, 75 M.J. 746, 748 (Army Ct. Crim. App. 2016). Appellant requests relief pursuant to this court's statutory authority. *See* Article 66(c), UCMJ; *United States v. Collazo*, 53 M.J. 721 (Army Ct. Crim. App. 2000) (recognizing the statutory authority of Courts of Criminal Appeals to grant relief for dilatory post-trial processing).

However, given appellant's meritorious issue regarding the improper use of propensity evidence of charged misconduct, we must determine if the post-trial delay violated appellant's due process rights to timely post-trial processing. *See Toohey v.*

*United States,* 60 M.J. 100, 102 (C.A.A.F. 2004) ("An appeal that needlessly takes ten years to adjudicate is undoubtedly of little use to a defendant who has been wrongly incarcerated on a ten-year sentence.") (quoting *United States v. Smith,* 94 F.3d 204, 207 (6th Cir.1996)). Appellant does not ground his post-trial processing claim as a due process violation. However, we are compelled to determine whether appellant has suffered a due process violation for several reasons.

We previously articulated the analysis to be conducted in such a situation in *United States v. Jackson*, 74 M.J. 710, 718 (Army Ct. Crim. App. 2015). First, in *United States v. Moreno,* 63 M.J. 129, 142 (C.A.A.F. 2006), our superior court established a "presumption of unreasonable delay that will serve to trigger the full [*Barker v. Wingo,* 407 U.S. 514 (1972),] analysis where the action of the convening authority is not taken within 120 days of the completion of trial." Second, our superior court in *Moreno* further urged this court to exercise "institutional vigilance" in this area of law. *Moreno*, 63 M.J. at 143. Lastly, our statutory authority under Article 66(c) requires us to review the "entire record." *See United States v. Tardif,* 57 M.J. 219, 223 (C.A.A.F. 2002) ("Our Court has consistently recognized the broad power of the Courts of Criminal Appeals to protect an accused.") (citation omitted). These reasons sufficiently establish our authority to review whether appellant suffered a due process violation in the post-trial processing of his case, even though he did not raise this issue before this court. We do so while acknowledging that the record may be less developed given the lack of litigation on this issue.

As noted above, in determining whether post-trial delay results in a due process violation, we apply the four-factor test announced in *Barker*. 407 U.S. at 530; *see also Moreno,* 63 M.J. at 135. These factors include (1) length of the delay, (2) reasons for the delay, (3) assertion of the right to a timely review and appeal, and (4) prejudice. *Id.* "Once this due process analysis is triggered by a facially unreasonable delay, the four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Moreno,* 63 M.J. at 136. These factors ultimately weigh in favor of appellant.

First, the length of the delay – 303 days - is facially unreasonable under any standard. *Id.* at 142 (establishing a presumption of unreasonable delay when the convening authority takes action more than 120 days after the trial ends). This 794-page record, while lengthy, was not particularly complex or unusual. This factor weighs in favor of appellant.

Second, the government's explanations for the delay involve a 14-day defense delay for errata, a 45-day delay for the military judge to authenticate the record of trial, a 58-day delay for the record to be transcribed, and 135-day delay for defense counsel to submit clemency on behalf of his client. With respect to the defense delay to submit clemency, it is the government's responsibility to hold individuals accountable for the performance of their duties in the military justice system. *See*

*Banks*, 75 M.J. at 748-51 (holding defense counsel to their statutory allowed time for post-trial). Still, we recognize that the defense requested this delay, and that the delay presumably benefited appellant. Thus, we consider these facts when deciding prejudice. With respect to the 58-day delay for the record to be transcribed, our superior court has held "that personnel and administrative issues ... are not legitimate reasons justifying otherwise unreasonable post-trial delay." *United States v. Arriaga,* 70 M.J. 51, 57 (C.A.A.F. 2011) ("To allow caseloads to become a factor in determining whether appellate delay is excessive would allow administrative factors to trump the Article 66 and due process rights of appellants.") (citing *Moreno,* 63 M.J. at 137) (additional citations and quotations omitted). The reasons for delay weigh in favor of appellant.

Third, there is no evidence before us that appellant asserted his right to speedy post-trial processing at any time before transcription was complete, before the military judge authenticated the record of trial, or before the convening authority took action. This factor weighs in favor of the government.

Fourth, we apply three factors when analyzing prejudice in the context of a due process violation for post-trial delay:

> (1) prevention of oppressive incarceration pending appeal;
>
> (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and
>
> (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

*Moreno,* 63 M.J. at 138-39 (citing *Rheuark v. Shaw,* 628 F.2d 297, 303 n. 8 (5th Cir. 1980)) (additional citations omitted).

The first sub-factor is "directly related to the success or failure" of appellant's substantive appeal. *Id.* at 139. "If the substantive grounds for the appeal are not meritorious, an appellant is in no worse position due to the delay, even though it may have been excessive." *Id.* (citing *Cody v. Henderson,* 936 F.2d 715, 720 (2d Cir. 1991)).

Appellant's remedy for the Mil. R. Evid. 413 issue is for this court to set aside appellant's sexual misconduct convictions and the sentence. Put another way, appellant served confinement as part of a sentence we cannot affirm. "[I]f an appeal is not frivolous, a person convicted of a crime may be receiving punishment the effects of which can never be completely reversed or living under the opprobrium of

9

guilt when he or she has not been properly proven guilty and may indeed be innocent under the law." *Id.* (quoting *Rheuark,* 628 F.2d at 304). This sub-factor weighs in favor of appellant.

The second sub-factor requires "an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140. Our superior court in *Moreno* concluded sex-offender registration following release from confinement sufficiently established this sub-factor, where appellant's ultimately-successful appeal was still pending at the time of registration. Appellant has not established a factual predicate that he has been released yet from confinement and been placed on a sex-offender registry. *Cf. United States v. Bush,* 68 M.J. 96, 100 (C.A.A.F. 2009) (requiring an appellant to produce corroborating evidence of employment prejudice). At the same time, we are cognizant sex-offender registration is an "automatic result" after some sex crime convictions. *United States v. Riley,* 72 M.J. 115, 121 (C.A.A.F. 2013) (citations omitted); *see also* Dep't of Def. Instr. 1325.07, Administration of Military Correctional Facilities and Clemency and Parole Authority, app'x. 4 to enclosure 2 (March 11, 2013) (establishing offenses requiring sex offender registration within three days of release from confinement, including abusive sexual contact with a child). Because appellant has not established whether he has registered as a sex offender yet, this factor weighs slightly in favor of the government.

The third sub-factor is relevant when a rehearing is authorized, as is the case here. *Moreno,* 63 M.J. at 140. "In order to prevail on this factor an appellant must be able to specifically identify how he would be prejudiced at rehearing due to delay. Mere speculation is not enough." *Id.* at 140-41 (citation omitted). Because appellant did not raise a due process claim, his brief does not address this issue. However, we also acknowledge the difficulty on appeal "in identifying problems that would hinder an appellant's ability to present a defense at a rehearing." *Id.* at 141 n. 19. This factor also weighs slightly in favor of the government.

In balancing the *Barker* factors, we have an appellant who, for nearly one year of post-trial processing from sentencing to action, had a meritorious appeal warranting a rehearing. As a result of the post-trial delay, appellant served oppressive incarceration. The government's reasons for this delay are unavailing given the constitutional rights at issue. These factors outweigh appellant's failure to assert his right to speedy post-trial processing, establish particularized anxiety or articulate any prejudice he would suffer at a rehearing. For the same reasons, we cannot conclude that the post-trial delay was harmless beyond a reasonable doubt. *See United States v. Allison,* 63 M.J. 365, 370 (C.A.A.F. 2006) ("If we conclude that an appellant has been denied the due process right to speedy post-trial review and appeal, 'we grant relief unless this court is convinced beyond a reasonable doubt that the constitutional error is harmless.'") (quoting *Toohey,* 63 M.J. at 363).

Having found a due process violation, we must determine an appropriate remedy. In *Moreno,* our superior court listed a range of available remedies:

> (a) day-for-day reduction in confinement or confinement credit; (b) reduction of forfeitures; (c) set aside of portions of an approved sentence including punitive discharges; (d) set aside of the entire sentence, leaving a sentence of no punishment; (e) a limitation upon the sentence that may be approved by a convening authority following a rehearing; and (f) dismissal of the charges and specifications with or without prejudice.

63 M.J. at 143.

As in *Moreno,* our range of available remedies is limited because we are authorizing a rehearing. Given that appellant has not demonstrated any prejudice he would face at that rehearing, dismissal of the charges and specifications is not appropriate at this stage of the proceedings.

Since we are setting aside the sentence, we cannot as a matter of logic only approve certain portions of the sentence, a common remedy when we grant relief pursuant to Article 66, UCMJ.

Appellant has already served nearly half of his confinement. In our view, the appropriate remedy is to limit the possible punishment that the convening authority may approve to a bad-conduct discharge, sixty-six months confinement, forfeiture of all pay and allowances, and reduction to the grade of E–1, unless the government tries appellant for additional offenses not tried at the first court-martial. *See* Article 63, UCMJ.

## CONCLUSION

The findings of guilty as to Charge II and its specifications and Additional Charge I and its specifications are set aside in light of our superior court's decisions in *Hills* and *Hukill*. 75 M.J. 350; 76 M.J. 219.

Specifications 2 and 4 of Charge III are conditionally dismissed based on an unreasonable multiplication of charges. *See United States v. Britton*, 47 M.J. 195, 203 (C.A.A.F. 1997) (J. Effron concurring); *United States v. Hines*, 75 M.J. 734, 738 n.4 (Army. Ct. Crim. App. 2016); *United States v. Woods*, 21 M.J. 856, 876 (A.C.M.R. 1986). Our dismissal is conditioned on Specifications 1 and 3 of Charge III surviving the "final judgment" as to the legality of the proceedings. *See* Article 71(c)(1), UCMJ (defining final judgment as to the legality of the proceedings). The remaining findings of guilty are AFFIRMED.

11

DENSON—ARMY 20150137

Additionally, the sentence is set aside. The case is returned to the same or a different convening authority. A rehearing is directed on Charge II and its specifications, Additional Charge I and its specifications, and the sentence. If the convening authority determines that a rehearing on those charges is impracticable, he may dismiss the charges and order a rehearing on the sentence only. If the convening authority determines that a rehearing on the sentence likewise is impracticable, he may take any other lawful action. In any event, the convening authority shall not approve a sentence in excess of a bad-conduct discharge, sixty-six months confinement, forfeiture of all pay and allowances, and reduction to the grade of Private E–1, unless the government tries appellant for additional offenses not tried at the first court-martial.

Senior Judge MULLIGAN and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

12